IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**PRECISION SPINE, INC., and**
**SPINAL USA, INC., f/k/a Spinal USA, LLC**                    **PLAINTIFFS**

**v.**                                        **CAUSE NO. 3:15CV681-LG-RHW**

**ZAVATION, LLC,**
**J2 MANUFACTURING LLC, and**
**JEFFREY JOHNSON**                                        **DEFENDANTS**

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
<u>DEFENDANTS' MOTION TO DISMISS</u>

BEFORE THE COURT is the Defendants' Motion to Dismiss [22] or in the

alternative, for a more definite statement.  The Plaintiffs have responded.  After

due consideration of the submissions and the relevant law, it is the Court's opinion

that the Plaintiffs' Complaint fails to state a claim in certain instances, but in the

main contains sufficient factual allegations to meet the Rule 12(b)(6) standard.

Accordingly, the Motion to Dismiss will be granted in part and denied in part.  The

Motion for a more definite statement will be denied.  The Plaintiffs are granted an

opportunity to amend their Complaint to address any deficiencies noted by the

Court.

## 1.  The Complaint

The Plaintiffs, Precision Spine, Inc. and Spinal USA, Inc. (together, "Spinal"),

allege a scheme by their former corporate officer, Jeffrey Johnson, to steal

confidential and proprietary information, trade secrets and employees in order to

unlawfully compete with Spinal.  There are twenty-one counts in the Complaint,

which names Jeffrey Johnson and two new companies he formed, Zavation, LLC, and J2 Manufacturing LLC as defendants.

Spinal alleges that it was founded by Jeffrey Johnson and others in 2005 to create and sell surgical spinal implants.  Jeffrey Johnson was removed from his positions as Spinal's President, Secretary and Treasurer in 2010.  Litigation ensued, and the parties entered into a Settlement Agreement on January 12, 2011, approximately one year after Jeffrey Johnson and Spinal parted ways.  The Settlement Agreement provided for "substantial consideration to be paid" to Johnson (Compl. 14 (¶49), ECF No. 1), in exchange for his membership interest in Spinal, as well as his agreement that he was bound by the covenant not to compete in Spinal's Operating Agreement for a period of one year after signing the Settlement Agreement.  Johnson also agreed that he would not employ or attempt to employ Spinal's employees for one year after signing the Settlement Agreement, and that he was bound by the confidentiality obligations in the Operating Agreement concerning both Spinal's products and its employees.

Spinal alleges that Johnson formed a rival company, Zamedica, LLC (later changed to Zavation, LLC), six months after leaving Spinal.  Zamedica was in existence for approximately six months before Johnson signed the Settlement Agreement, although Johnson did not so inform Spinal.  Spinal alleges that weeks after entering into the Settlement Agreement, Johnson hired Walker, Spinal's former Director of Engineering.  Spinal had just terminated Walker on January 25, 2011, because he was unwilling to sign a new non-competition agreement with

-2-

Spinal.  Nevertheless, Spinal alleges that Walker remained obligated by his employment agreement to not disclose Spinal's confidential information.  Spinal alleges that Johnson was aware of Walker's obligation because Johnson counter-signed Walker's employment agreement in his capacity as President of Spinal.  Spinal asserts claims of breach of contract, breach of the duty of good faith and fair dealing, and fraud in the inducement against Jeffrey Johnson for these actions.

Spinal alleges that Johnson and Walker developed a line of competing spinal medical devices by misappropriating Spinal's confidential and proprietary information, and that Zavation will continue to use Spinal's confidential and proprietary information.  Spinal alleges that Zavation, a much smaller company, has been able to develop a portfolio of spinal products almost as large as Spinal's because it has misappropriated information using Spinal's former employees.  Spinal alleges that by using its confidential and proprietary information, Zavation has been able to avoid a lengthy development and testing period for new products, and thereby obtain much faster FDA clearance of products competing with Spinal's.  Spinal brings two claims of misappropriation of trade secrets and confidential information, as violations of Mississippi law and the New Jersey Trade Secret Act.

Spinal alleges a continuing campaign by Jeffrey Johnson and Zavation to recruit Spinal employees, causing at least seven employees to breach their ongoing contractual obligations to Spinal.  Spinal alleges ten counts of tortious interference with contracts between itself and former employees Phillips, Cummins, Kyle Johnson, Smith, Ratcliff, Carroll, Page, John Wilson, Cochran, and Walker.  Spinal

also alleges claims of unfair competition and "corporate raiding" in regard to Jeffrey Johnson's hiring of these former Spinal employees, and a claim of tortious interference with prospective business advantage in regard to Jeffrey Johnson's hiring of John Wilson and Cochran.

Spinal alleges that while Kyle Johnson was still Spinal's employee, he communicated with two manufacturers on behalf of Zavation. Spinal also alleges that while John Wilson was an employee of Spinal, he transferred certain of Spinal's trade secrets to his personal email account, and then forwarded them to Cummins for use by Zavation. Finally, Spinal alleges that James Cochran, while an employee of Spinal, emailed certain of Spinal's trade secrets to Defendant J2 Manufacturing, LLC. Spinal brings claims of aiding and abetting fiduciary duty against Johnson and Zavation for the actions of Kyle Johnson and John Wilson, and against J2 Manufacturing for the actions of James Cochran.

## 2. The Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.

-4-

at 570).  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Id.*  Whether this standard has been met is "a

context-specific task that requires the reviewing court to draw on its judicial

experience and common sense."  *Id.* at 679.

Fraud claims must also satisfy Federal Rule of Civil Procedure 9(b), which

requires that a party "state with particularity the circumstances constituting fraud"

although "malice, intent, knowledge, and other conditions of a person's mind may be

alleged generally."  Fed. R. Civ. P. 9(b).  To meet Rule 9(b)'s heightened standard, "a

plaintiff must plead the time, place and contents of the false representation, as well

as the identity of the person making the misrepresentation and what that person

obtained thereby."  *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186

(5th Cir. 2009) (internal quotation marks and alterations omitted).  "Given the

elements of reliance and damages, pleading common law fraud with particularity

demands the specifics of the false representation."  *Id.* at 188–89.

## 3.  The Motions

In addition to challenging the sufficiency of the allegations in each count of

the Complaint, Defendants make two global challenges.  They argue that 1) each of

the counts fails the conclusory test because they simply assert that Plaintiffs have

suffered irreparable harms and have been damaged as a result; and 2) the

Complaint fails to state a plausible claim because it is more plausible that it was an

exposé in the Wall Street Journal that caused Spinal USA's damages, not

Defendants' conduct.

The Court does not agree that the Complaint is generally conclusory or implausible.  The allegations are replete with facts that lead to a plausible conclusion that Defendants caused damage to Spinal by stealing employees and confidential, proprietary information.  Spinal primarily seeks injunctive relief to prevent the Defendants from continuing to hire its employees and use its confidential and proprietary information.  (Compl. 53, ECF No. 1).  Spinal seeks compensatory damages to the extent they can be proven at trial.  (*Id.*).  Whether a newspaper article is a more plausible cause for Plaintiffs' claimed compensatory damages is a theory Defendants must present to the factfinder.  For these reasons, the motion for a more definite statement will be denied, and the Court will proceed to an examination of the adequacy of the allegations concerning each cause of action.

### A.  Tortious Interference With Contract - Counts One Through Ten

The elements of the tort of intentional interference with contract are: (1) intentional and willful acts, (2) calculated to cause damage to the plaintiff in his lawful business, (3) done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice), and (4) resulting in actual damage or loss.  *O.W.O. Invs., Inc. v. Stone Inv. Co., Inc.*, 32 So. 3d 439, 448-49 (Miss. 2010) (quoting *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998)).  Additionally, there must be some shared enforceable agreement with another party that would have been performed

if not for the alleged interference by the defendant.  *Coleman & Coleman Enters.,*

*Inc. v. Waller Funeral Home*, 106 So. 3d 309, 316 (Miss. 2012).

> The element of willfulness and calculation does not require a showing
> on the part of the plaintiff that defendant had a specific intent to
> deprive plaintiff of contractual rights.  Rather, the requisite intent is
> inferred when defendant knows of the existence of a contract and does
> a *wrongful act without legal or social justification that he is certain or
> substantially certain will result in interference with the contract.*

*Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998) (quoting

*Liston v. Home Ins. Co.*, 659 F. Supp. 276, 281 (S.D. Miss. 1986)) (emphasis in

original).

Defendants contend that as to each of the ten counts alleging a tortious

breach of contract, the allegations are insufficient to state a claim against Precision

Spine, Inc. because they identify a Non-Competition and Confidentiality Agreement

with Spinal USA, LLC and not Precision Spine.  The Court notes that Count Seven

alleges the opposite – an Agreement with Precision Spine and not Spinal USA.

Although Spinal USA, Inc. is alleged to be a wholly owned subsidiary of

Precision Spine, Inc., there are no further allegations concerning the relationship

between Spinal USA and Precision Spine indicating that they are anything other

than two separate entities.  As Precision Spine is not alleged to be a party to any

Non-Competition and Confidentiality Agreement except for the Agreement with

Page at issue in Count Seven, there are no allegations of an enforceable contractual

obligation owed by the former Spinal employees to Precision Spine in Counts One

through Six and Eight through Ten.  *See Isle of Capri Casino, Inc. v. Silver Land,*

*Inc.*, 132 So. 3d 588, 597 (Miss. Ct. App. 2013).  Accordingly, the Court finds that Precision Spine, Inc. has failed to state claims for tortious interference with contract in Counts One through Six and Eight through Ten.  It follows that Spinal USA has not stated a claim for tortious interference with contract in Count Seven, as the Agreement at issue there is alleged to have been between Page and Precision Spine, Inc.

Defendants also argue that there are no allegations that J2 Manufacturing took any actions to interfere with the Agreements.  However, the Court notes Spinal's allegation that while James Cochran was an employee of Spinal, he transmitted certain trade secrets to J2 Manufacturing.  Accordingly, the Court finds sufficient facts alleged to support the claim for tortious interference in Count Nine. The remaining Counts of tortious interference do not include allegations indicating that J2 Manufacturing (rather than Jeffrey Johnson and/or Zavation) induced a Spinal employee to breach his Non-Competition and Confidentiality Agreement. Therefore, the Complaint does not state tortious breach of contract claims against J2 Manufacturing in Counts One through Eight and Ten.

Defendants also challenge the merits of the tortious interference claims. They contend that Spinal may not enforce the Non-Competition and Confidentiality Agreements because such agreements are "frequently unenforceable" and they were extracted from Spinal employees with no new consideration given.  Additionally, Defendants contend that they should not be held accountable for their employees' actions, because they may have been acting on their own account when they

-8-

obtained information from Spinal employees, and in any event, no information about Spinal's products is confidential or proprietary. These merits-based arguments are immaterial to the Rule 12(b)(6) analysis and will not be considered.

### B. Misappropriation - Counts Eleven and Twelve

To state a viable claim under the Mississippi Uniform Trade Secrets Act ("MUTSA"),[1] Spinal must allege: (1) a trade secret existed; (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (3) the use of the trade secret was without the plaintiff's authorization. *Unified Brands, Inc. v. Teders*, 868 F. Supp. 2d 572, 583 (S.D. Miss. 2012) (citations omitted). Spinal has alleged that it had trade secrets concerning the design and manufacture of its products which the defendants acquired through certain of Spinal's former employees, without Spinal's authorization. These allegations are sufficient to state a cause of action under the MUTSA.

If New Jersey law is applicable[2], the New Jersey Trade Secrets Act requires similar allegations of "actual or threatened misappropriation." N.J. Stat. Ann. § 56:15-3.

> The following acts constitute misappropriation: (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) Disclosure or use of a trade secret of another without express or

---

[1] Spinal does not refer to the MUTSA in its Complaint, but both parties discuss the claim as if brought under the MUTSA in the briefing.

[2] Both Plaintiffs are New Jersey corporations with their principal place of business in New Jersey.

implied consent of the trade secret owner by a person who: (a) used improper means to acquire knowledge of the trade secret; or (b) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was derived or acquired through improper means; or (c) before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired through improper means.

*Diversified Indus., Inc. v. Vinyl Trends, Inc.*, No. CIV.A. 13-6194 JBS/JS, 2014 WL 1767471, at *7 (D.N.J. May 1, 2014); N.J. Stat. Ann. § 56:15-2. Spinal's allegations are sufficient to state claims of misappropriation under both options (1) and (2) above, and therefore are sufficient to survive defendants' Motion to Dismiss. For these reasons, the Motion to Dismiss Counts Eleven and Twelve should be denied.

C. *Corporate Raiding - Count Thirteen*

There is no cause of action for corporate raiding in Mississippi, and it does not appear to be recognized as a stand-alone tort elsewhere. *See, e.g., The Finish Line, Inc. v. Foot Locker, Inc.*, No. 1:04CV877RLYWTL, 2006 WL 146633, at *9 (S.D. Ind. Jan. 18, 2006); *Tech. Corp. v. Cisco Sys., Inc.*, Civ. No. 00-2253 (JNE/JGL), 2003 WL 22231544, at *3 (D. Minn. Sept. 25, 2003). The Motion to Dismiss Count Thirteen should be granted.

D. *Tortious Interference With Prospective Economic Advantage - Count Fourteen*

Spinal claims that the Defendants have interfered with their business relationships with certain former employees, and will continue to do so with current employees.

There are four elements necessary to prove a claim of tortious interference

-10-

with a business relationship (sometimes referred to as interference with prospective

advantage):

> (1) The acts were intentional and willful; (2) The acts were calculated
> to cause damage to the plaintiffs in their lawful business; (3) The acts
> were done with the unlawful purpose of causing damage and loss,
> without right or justifiable cause on the part of the defendant (which
> constitutes malice); (4) Actual damage and loss resulted.

*MBF Corp. v. Century Bus. Commc'ns, Inc., A Subsidiary of Century Tel. Enters.,*

*Inc.*, 663 So. 2d 595, 598 (Miss. 1995) (citations omitted).  The allegations of the

Complaint clearly include facts which, if proven true, give rise to a claim of tortious

interference with prospective advantage.  The Motion to Dismiss Count Fourteen

should be denied.

> ### E.  Aiding and Abetting Breach of Fiduciary Duty - Counts Fifteen, Sixteen and Seventeen

Spinal claims that the Defendants aided and abetted three former employees

in breaching their fiduciary duties to Spinal.  In Count Fifteen, Spinal alleges

Jeffrey Johnson and Zavation aided and abetted Kyle Johnson's breach by

encouraging him to communicate with at least two parts manufacturers on behalf of

Zavation while he was still a Spinal employee.  In Count Sixteen, Spinal alleges

that Jeffrey Johnson and Zavation encouraged John Wilson to transmit Spinal's

confidential and proprietary trade information to Zavation.  In Count Seventeen,

Spinal alleges that J2 Manufacturing encouraged James Cochran to transmit

Spinal's confidential and proprietary trade information to J2.

Defendants contend that Spinal has done no more than show that the three

employees in question were employees or officers of Spinal, and that is not enough
to establish a fiduciary duty.

To make a claim for breach of fiduciary duty under Mississippi law, a
plaintiff must show the existence of a fiduciary duty and a breach of such duty.
*Lowery v. Guar. Bank and Trust Co.,* 592 So. 2d 79, 83 (Miss. 1991) ("A fiduciary
duty must exist before a breach of the duty can occur."); *AmSouth Bank v. Gupta,*
838 So.2d 205, 216 (Miss. 2002) ("The party asserting the existence of a fiduciary
relationship bears the burden of proving its existence by clear and convincing
evidence.").

Spinal alleges that each of the three employees owed it a fiduciary duty by
virtue of the confidentiality agreement each signed as a condition of employment.  A
contract can create a fiduciary relationship between the parties, but only "in some
rare cases" where the terms of the contract itself create a fiduciary relationship.
*Robley v. Blue Cross/Blue Shield of Miss.*, 935 So. 2d 990, 994-95 (Miss. 2006).  The
"rare case" is one in which "the contract relationship creates a justifiable special
trust and confidence in the parties so that the first party relaxes the care and
vigilance normally exercised in entering into a transaction with a stranger."  *Id*. at
995.  The factors to be considered are whether

> (1) the activities of the parties go beyond their operating on their own
> behalf, and the activities [are] for the benefit of both; (2) [ ] the parties
> have a common interest and profit from the activities of the other; (3)
> [ ] the parties repose trust in one another; and (4) [ ] one party has
> dominion or control over the other.

*Id.*

The three former Spinal employees at issue here are all alleged to have been in possession of confidential and proprietary trade information, which they acquired in connection with their job duties. The employees were required by contract to keep the information confidential, and Spinal trusted them to keep it confidential. When viewing all of the facts alleged in the light most favorable to Spinal, the Court finds that Spinal has sufficiently alleged that the three employees in question owed fiduciary duties to Spinal, and that the defendants assisted the three employees in breaching their fiduciary duties. Therefore, the defendants' Motion to Dismiss Counts Fifteen, Sixteen and Seventeen should be denied.

### F. Unfair Competition - Count Eighteen

Spinal alleges that the defendants undertook to hire key Spinal personnel and obtain Spinal trade secrets with knowledge of and disregard for Spinal's rights, and with the intention of harming Spinal's competitive position.

Defendants argue only that this claim is a combination of the corporate raiding claim and the "confidentiality" claim that is preempted by the MUTSA. However, Mississippi provides a cause of action for unfair competition "against one who sets about to maliciously and wantonly injure a competitor" and injury results. *Cenac v. Murry,* 609 So. 2d 1257, 1269 (Miss. 1992). Spinal has alleged sufficient facts to state a cause of action for unfair competition under Mississippi law. Therefore, the defendants' Motion to Dismiss Count Eighteen should be denied.

-13-

*G.  Breach of Contract and the Duty of Good Faith and Fair Dealing - Counts Nineteen and Twenty*

Spinal alleges that Jeffrey Johnson breached the January 2011 Settlement Agreement that was intended to resolve the dissolution of their business relationship by failing to comply with the covenant not to compete, the covenant not to solicit or employ Spinal employees, and the covenant against the disclosure of confidential information.

Defendants first contend that it is apparent from the face of the Complaint that these breach of contract claims are barred by the three-year statute of limitations in Miss. Code Ann. § 15-1-49, and they have also been waived.

Spinal argues that Jeffrey Johnson has been in continuous breach of the Settlement Agreement.  He solicited and hired Spinal employees in 2011, 2013, 2014, and 2015, and he has continuously used Spinal's trade secrets to benefit the defendants.  This Court has previously noted the Fifth Circuit's recognition of a continuing breach of contract claim in Mississippi, provided that the allegations are of repeated and continuous acts of alleged wrongful conduct rather than continued ill effects of a wrongful act.  *Singing River Elec. Power Assoc. v. BellSouth Telecomms., Inc.*, No. 1:10cv486-LG-RHW, 2011 WL 5082235, at *7-8 (S.D. Miss. Oct. 26, 2011) (citing *Merchants & Marine Bank v. Douglas-Guardian Warehouse Corp.*, 801 F.2d 742, 745 (5th Cir. 1986); *Provenza v. Stamps*, No. 1:09cv191-LG-RHW, 2010 WL 706480, at *2 (S.D. Miss. Feb. 22, 2010)).  The allegations of Spinal's Complaint set out multiple discrete breaches of the Settlement Agreement

up until this case was filed.  Accordingly, it is not apparent on the face of the

Complaint that Jeffrey Johnson's alleged breaches are barred by the statute of

limitations, and the Court will not dismiss the breach of contract claims on that

ground.

The Defendants also state that Spinal has admitted that it "ignored the

complained-of conduct for <u>years</u>" and therefore has waived the breach of contract

claims.  (Def. Mem. 27, ECF No. 23).   Having reviewed the Complaint, the Court

does not find a waiver.  The allegation is that "In or about 2013, Zavation's unfair

competition with Precision Spine became harder to ignore when it developed and

successfully obtained FDA approval for a uniplate that was substantially similar . .

. ."  (Compl. 19 (¶72)).  Viewing the allegation in the light most favorable to Spinal,

this language does not show that Spinal knowingly waived its breach of contract

claims against Jeffrey Johnson.  Therefore, the Court proceeds to examine the

sufficiency of the allegations of Counts Nineteen and Twenty.

 "The elements of a breach of contract are: (1) the existence of a valid and

binding contract; (2) that the defendant has broken, or breached it; and (3) that the

plaintiff has been thereby damaged monetarily."  *Favre Prop. Mgmt., LLC v. Cinque

Bambini,* 863 So. 2d 1037, 1044 (Miss. Ct. App. 2004) (citing *Warwick v. Matheney,*

603 So. 2d 330, 336 (Miss. 1992)).  The factual allegations in the Complaint are that

Jeffrey Johnson was subject to the terms of the Settlement Agreement, which he

breached multiple times, resulting in damage to Spinal's business.  These

allegations are sufficient to state breach of contract claims.  The Motion to Dismiss

Count Nineteen should be denied.

Mississippi law also recognizes that every contract contains an implied covenant of good faith and fair dealing.  *Baldwin v. Laurel Ford Lincoln–Mercury, Inc.,* 32 F. Supp. 2d 894, 898 (S.D. Miss. 1998) (citing *Cenac,* 609 So. 2d at 1272)). "'This duty is based on the fundamental notions of fairness,'" and "[t]he breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness, or reasonableness." *Cenac,* 609 So. 2d at 1272 (citing Restatement (Second) of Contracts § 205, 100 (1979)).  Given that Spinal has pled that Jeffrey Johnson entered into the Settlement Agreement having already breached the terms and with plans for further actions that would constitute breach, Spinal has adequately pled a claim for breach of the duty of good faith and fair dealing.  Thus, the Defendants' Motion to Dismiss Count Twenty should be denied.

### H.  Fraud in the Inducement - Count Twenty-One

Spinal alleges that Jeffrey Johnson induced it to enter into the Settlement Agreement by concealing the fact that he had formed a competing company and planned to immediately hire one of Spinal's employees.  Thus, Johnson is alleged to have had knowledge that he would not comply with the terms of the Settlement Agreement before he negotiated and executed the Agreement.  Spinal alleges it gave value for Jeffrey Johnson's contractual promises, and was damaged when he did not fulfill them.

Under Mississippi law, a party alleging fraudulent inducement to a contract must plead and prove the following elements: 1) a representation, 2) its falsity, 3)

its materiality, 4) the speaker's knowledge of its falsity or ignorance of its truth, 5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, 6) the hearer's ignorance of its falsity, 7) his reliance on its truth, 8) his right to rely thereon, and 9) his consequent and proximate injury. *Koury v. Ready,* 911 So. 2d 441, 445 (Miss. 2005). A party's intent may be inferred from the party's subsequent acts following the representation. *Arete Partners, LP v. Gunnerman,* 594 F.3d 390, 394 (5th Cir. 2010). Spinal's factual allegations address each of the elements of a fraud in the inducement claim, and in addition clearly comply with the "who, what, when, where, and how" particularity requirement under Rule 9(b). Therefore, the Defendants' Motion to Dismiss Count Twenty-One should be denied.

## 4. Conclusion

Spinal's allegations are sufficient to survive Defendants' Motion to Dismiss except for allegations regarding certain parties in Counts One through Ten, as set out above, and the corporate raiding claim in Count Thirteen. The Motion is granted in those particulars and denied in all other respects. Plaintiffs are granted ten days from the date of this Order to file an amended complaint, should they wish to do so.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Defendants' Motion to Dismiss [22] or in the alternative, for a more definite statement, is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Plaintiffs are

granted ten (10) days from the date of this Order to file an amended complaint.

**SO ORDERED AND ADJUDGED** this the 2nd day of March, 2016.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE