**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**PRECISION SPINE, INC., and SPINAL**
**USA, INC. f/k/a Spinal USA, LLC**                    **PLAINTIFFS/COUNTER-DEFENDANTS**

**v.**                                                                  **CIVIL ACTION NO.: 3:15CV681-LG-RHW**

**ZAVATION, LLC, J2**
**MANUFACTURING LLC, and**
**JEFFREY JOHNSON**                                      **DEFENDANTS/COUNTER-PLAINTIFFS**

## ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIM

Defendants Zavation, LLC ("Zavation"), J2 Manufacturing, LLC ("J2"), and Jeffrey

Johnson ("Johnson") (collectively "Defendants"), by and through undersigned counsel, hereby

file this their Answer to Plaintiffs' Amended Complaint for Injunctive and Other Relief

("Complaint"), and Counterclaim and in support would show as follows:

### AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Some or all of Plaintiffs' claims fail to state a claim upon which relief may be granted.

### SECOND DEFENSE

Some or all of Plaintiffs' claims should be dismissed for failure to join an indispensable

party.

### THIRD DEFENSE

Some or all of Plaintiffs' claims are barred by the applicable statutes of limitations and/or

statutes of repose.

1

## FOURTH DEFENSE

Some or all of Plaintiffs' claims are preempted and/or displaced by the Mississippi Uniform Trade Secret Act.

## FIFTH DEFENSE

Some or all of Plaintiffs' claims are barred by their failure to meet or comply with the Mississippi Uniform Trade Secret Act.

## SIXTH DEFENSE

Some or all of Plaintiffs' claims are barred by the doctrines of laches, unclean hands, or *in pari delicto* or other equitable principles.

## SEVENTH DEFENSE

Some or all of Plaintiffs' claims or damages are barred by the doctrine of *ex dolo malo non oritur actio* by and through their fraudulent business practices. *See, e.g.*, the October 8, 2011 Wall Street Journal article regarding Adam Lewis, M.D.

## EIGHTH DEFENSE

Some or all of Plaintiffs' claims are barred by the parole evidence rule.

## NINTH DEFENSE

One or more of the Plaintiffs lacks authority, capacity, and/or standing to assert the claims that it asserts and is not a real party in interest.

## TENTH DEFENSE

Some or all of Plaintiffs' claims are barred by the doctrines of waiver, estoppel, or ratification.

## ELEVENTH DEFENSE

Some or all of Plaintiffs' claims against Defendants are barred as the products or designs at issue are in the public domain, are not confidential, are easily reverse engineered, and are not patented or patentable.

## TWELFTH DEFENSE

Some or all of Plaintiffs' claims against Defendants are barred by lack of privity.

## THIRTEENTH DEFENSE

Some or all of Plaintiffs' claims are barred as the underlying contract or agreement that it is predicated upon is unenforceable, overly broad, ambiguous and/or unduly vague.

## FOURTEENTH DEFENSE

Some or all of Plaintiffs' claims against Defendants are barred as one or more of the former employees of Plaintiff that are referenced in the Complaint were constructively discharged by Plaintiffs by and through their arbitrary, capricious, bad faith or oppressive actions toward them while employed by Plaintiffs.

## FIFTEENTH DEFENSE

Some of Plaintiffs' claims are founded upon alleged confidentiality agreements which Plaintiffs have asserted preclude certain individuals from working on projects for one or more Defendants.  These claims are barred because the attempted use of confidentiality agreements as a restriction upon competition would require that the confidentiality agreements contain reasonable restrictions as to duration and geographical reach whereas the confidentiality agreements at issue fail to contain any restrictions as to duration and/or geographical reach. Thus, the confidentiality agreements must be considered as void, in violation of public policy, to the extent Plaintiffs are attempting to use them as a means to restrict competition.

## SIXTEENTH DEFENSE

Some of Plaintiffs' claims are founded upon alleged confidentiality agreements which Plaintiffs have asserted preclude certain individuals from working on projects for one or more Defendants.  These claims are barred because the attempted use of confidentiality agreements as a means of prohibiting an individual from working in his professional area of expertise violates public policy.

## SEVENTEENTH DEFENSE

In equity, the Court should deem all of the employment, confidentiality or covenant not to compete agreements of Plaintiffs as unenforceable based on Plaintiffs' creation of a hostile or intolerable work environment or by attempts to coerce former employees to engage in illegal activity (and thereby dismiss some or all of the claims of Plaintiffs).

## EIGHTEENTH DEFENSE

Some or all of Plaintiffs' claims are barred by superseding or intervening actions of Plaintiffs and/or third parties to which one or more of the Defendants have no control and/or to which they had no knowledge.

## NINETEENTH DEFENSE

Some or all of Plaintiffs' claims are barred by the failure of one or more of Defendants' lack of knowledge of or participation in said act or action.

## TWENTIETH DEFENSE

Some of Plaintiffs' claims are barred because the claims are founded upon alleged actions of independent contractors for whom Defendants are not responsible.

### TWENTY-FIRST DEFENSE

On information and belief, some or all of Plaintiffs' claims or requested remedies may be barred by the failure of conditions precedent.

### TWENTY-SECOND DEFENSE

Some or all of Plaintiffs' claims may be barred by estoppel, collateral estoppel, agency by estoppel, judicial estoppel, res judicata and/or discharge in bankruptcy.

### TWENTY-THIRD DEFENSE

To the extent Plaintiffs may be attempting to allege fraud, any such claims are barred because Plaintiffs have failed to plead fraud with the required particularity.

### TWENTY-FOURTH DEFENSE– ANSWER

For its answer to the allegations of the Complaint, paragraph by paragraph, Defendants state as follows:

### General Statement

Defendants repeat the headings and subheadings of the Complaint for purposes of organization and reference only.  No response is required to the Complaint's headings and subheadings.  In the alternative, to the extent such a response is required, those allegations are denied.

### NATURE OF THE ACTION

1.      Defendants deny the allegations of Paragraph 1 of the Complaint.

2.      Johnson admits that he publically created Zamedica, LLC ("Zamedica") on or about July 30, 2010 for the purpose and intent to design and sell spinal products that did not compete with Spinal USA, LLC ("Spinal").  After Spinal objected to his plans, Johnson admits that he then decided to use Zamedica in order to sell spinal products outside of the United States.

Johnson admits that he publically changed the name from Zamedica to Zavation in early 2011. J2 admits that it was formed on or about March 25, 2014.  Defendants deny the remaining allegations of Paragraph 2 of the Complaint.

3.      Johnson admits that he publically created Zamedica on or about July 30, 2010 for the purpose and intent to design and sell spinal products that did not compete with Spinal.  After Spinal objected to his plans, Johnson admits that he then decided to use Zamedica in order to sell spinal products outside of the United States.  Johnson admits that he publically changed the name from Zamedica to Zavation in early 2011.  Johnson admits that he entered into a Settlement Agreement with Spinal and two other entities in January 2011.  Johnson admits that the terms of the Settlement Agreement speak for themselves.  Defendants deny the remaining allegations of Paragraph 3 of the Complaint.

4.      Johnson admits that he publically created Zamedica on or about July 30, 2010 for the purpose and intent to design and sell spinal products that did not compete with Spinal.  After Spinal objected to his plans, Johnson admits that he then decided to use Zamedica in order to sell spinal products outside of the United States.  Johnson admits that he publically changed the name from Zamedica to Zavation in early 2011.  Johnson admits that he entered into a Settlement Agreement with Spinal and two other entities in January 2011.  Johnson admits that the terms of the Settlement Agreement speak for themselves.  Defendants deny the remaining allegations of Paragraph 4 of the Complaint.

5.      Johnson admits that he entered into a Settlement Agreement with Spinal and two other entities in January 2011.  Johnson admits that the terms of the Settlement Agreement speak for themselves.  Johnson and Zavation admit that the filings with the United States Patent and

Trademark Office speak for themselves.  Defendants deny the remaining allegations of Paragraph 5 of the Complaint.

6.      Johnson admits that he entered into a Settlement Agreement with Spinal and two other entities in January 2011.  Johnson admits that the terms of the Settlement Agreement speak for themselves. Defendants deny the remaining allegations of Paragraph 6 of the Complaint.

7.      Zavation admits that its public filings with the U.S. Food and Drug Administration speak for themselves.  Defendants deny the remaining allegations of Paragraph 7 of the Complaint.

8.      Zavation admits that it has hired Frankie Cummins, Kyle Johnson, Milton Phillips, and Ryan Ratcliffe as employees.  Zavation admits that it has used Scott Smith as a consultant.  Zavation admits that it made an offer of employment to James Cochran, but he has gone to work for another entity.  J2 admits that it made an offer of employment to Deidred Hancock Garrett, but she has been re-hired by one or more of the Plaintiffs.  Defendants deny the remaining allegations of Paragraph 8 of the Complaint.

9.      Defendants deny the allegations of Paragraph 9 of the Complaint.

10.     Defendants deny the allegations of Paragraph 10 of the Complaint.

11.     Defendants deny the allegations of Paragraph 11 of the Complaint.

12.     Defendants deny the allegations of Paragraph 12 of the Complaint.

13.     Regarding the first sentence of Paragraph 13 of the Complaint, Defendants are without information or knowledge sufficient to admit or deny the allegations and, therefore, deny the same.  Defendants are without information or knowledge sufficient to admit or deny the allegations in the second sentence of Paragraph 13 and, therefore, deny the same.  Zavation admits that Cummins now works for it.  Defendants deny the remaining allegations of Paragraph 13.

14.     Defendants deny the allegations of Paragraph 14.

15.     Defendants admit that before the filing of this lawsuit that it was developing a posterior cervical system called Z-Link PC.  Defendants are without information or knowledge sufficient to admit or deny the allegations of what Wilson may or may not have said at any given time as set forth in the first sentence of this paragraph and, therefore, deny the same.  Defendants deny the remaining allegations of Paragraph 15 of the Complaint.

16.     The allegations in the first sentence of Paragraph 16 are not directed at these Defendants, and therefore, no response is required.  To the extent any allegation in the first sentence of Paragraph 16 is directed at Defendants, Defendants are without information or knowledge sufficient to admit or deny those allegations and, therefore, deny the same.  Defendants admit that Zavation and J2 were planning to move to a larger facility and have now moved to the larger facility.  Defendants deny the remaining allegations of Paragraph 16 of the Complaint.

17.     Defendants are without information or knowledge sufficient to admit or deny the allegations of what Plaintiffs learned in July 2015 and, therefore, deny the same.  Defendants deny the remaining allegations of Paragraph 17 of the Complaint.

18.     Defendants are without information or knowledge sufficient to admit or deny the allegations of the first sentence of this paragraph and, therefore, deny the same.  Defendants are without information or knowledge sufficient to admit or deny the allegations of what Cochran may or may not have said as set forth in this paragraph and, therefore, deny the same. Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph that Cochran copied certain items to a removable disk and, therefore, deny the same. Defendants deny the remaining allegations of Paragraph 18 of the Complaint.

19.     Defendants are without information or knowledge sufficient to admit or deny the allegations of what Plaintiffs learned "within the past few weeks" and, therefore, deny the same. Defendants admit that Kyle Johnson formed J2, which is a manufacturing company that is separate and distinct from Zavation.  Defendants admit that J2 has manufactured some of Zavation's products.  J2 admits that Kyle Johnson serves as the President of J2.  Defendants admit that Zavation and J2 operate out of the same facility located at 400 Liberty Drive, Flowood, Mississippi.  Defendants deny the remaining allegations of Paragraph 19 of the Complaint.

20.     Defendants deny the allegations of Paragraph 20 of the Complaint.

21.     Defendants deny the allegations of Paragraph 21 of the Complaint.

22.     Defendants deny the allegations of Paragraph 22 of the Complaint.

**THE PARTIES**

23.     Defendants are without information or knowledge sufficient to admit or deny the allegations of Paragraph 23 of the Complaint and, therefore, deny the same.

24.     Defendants are without information or knowledge sufficient to admit or deny the allegations of Paragraph 24 of the Complaint and, therefore, deny the same.

9

25.     Defendants admit that Zavation is a limited liability company formed under the laws of Mississippi with a principal place of business at 220 Lakeland Parkway, Flowood, MS 39232.  Johnson admits that he owns a portion of Zavation.  Defendants deny the remaining allegations of Paragraph 25 of the Complaint.

26.     J2 admits that it is a limited liability company formed under the laws of Mississippi.  J2 admits that it states on its website that "J2 is a contract precision manufacturer of implants and surgical instruments."  J2 operates from 400 Liberty Drive, Flowood, Mississipi 39232.  Defendants admit that Zavation and J2 are planning to move to a larger facility. Defendants deny the remaining allegations of Paragraph 26 of the Complaint.

27.     Johnson admits that he is a citizen of the State of Mississippi, that he resides at 709 Inheritance Place, Flowood, MS  39322, that he is a former founding member of Spinal, and that he served as President, Secretary and Treasurer of Spinal for a period of time.  Defendants deny the remaining allegations of Paragraph 27 of the Complaint.

## JURISDICTION AND VENUE

28.     Based on the representations of Plaintiffs that "'there was a legitimate business reason for the assignment,'" of claims from Precision Medical, Inc. to Precision Spine, Inc. and that the assignment was not "'merely an effort to secure federal diversity jurisdiction'", Defendants admit the allegations of Paragraph 28 of the Complaint.

29.     Defendants admit the allegations of Paragraph 29 of the Complaint.

30.     Defendants admit the allegations of Paragraph 30 of the Complaint.

## ALLEGATIONS COMMON TO ALL COUNTS

31.     Defendants admit that the spinal products market is made up of numerous manufacturers of various sizes and that the market is highly competitive.  Defendants deny the remaining allegations of Paragraph 31 of the Complaint.

32.     Defendants deny the allegations of Paragraph 32 of the Complaint.

33.     Defendants deny the allegations of Paragraph 33 of the Complaint.

34.     Defendants deny the allegations of Paragraph 34 of the Complaint.

### Precision Spine's Business and Product Line

35.     Defendants deny the allegations of Paragraph 35 of the Complaint.

36.     Johnson admits that the provisions of "Operating Agreement" speak for themselves.  Defendants deny the remaining allegations of Paragraph 36 of the Complaint.

37.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 37 and, therefore, deny the same.

38.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 38 of the Complaint and, therefore, deny the same.

39.     Defendants deny the allegations of Paragraph 39 of the Complaint.

40.     Defendants deny the allegations of Paragraph 40 of the Complaint.

41.     Defendants deny the allegations of Paragraph 41 of the Complaint.

42.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 42 of the Complaint and, therefore, deny the same.

### Zavation's Business and Substantially Similar Product Line

43.     Johnson admits that he publically created Zamedica on or about July 30, 2010 for the purpose and intent to design and sell spinal products that did not compete with Spinal.  After

11

Spinal objected to his plans, Johnson admits that he then decided to use Zamedica in order to sell spinal products outside of the United States. Johnson admits that he publically changed the name from Zamedica to Zavation in early 2011. Johnson admits that he entered into a Settlement Agreement with Spinal and two other entities in January 2011. Johnson admits that the terms of the Settlement Agreement speak for themselves. Defendants deny the remaining allegations of Paragraph 43 of the Complaint.

44.     Zavation admits that it has developed a number of spinal products. Zavation admits that there are numerous manufacturers of non-patented, standard spinal devices that are substantially similar, if not identical, in the market. Zavation admits that all of the spinal products that it manufactures may be easily reverse engineered by a competitor. Defendants deny the remaining allegations of Paragraph 44 of the Complaint.

45.     Defendants admit that the FDA website sets forth the dates that Plaintiffs and Defendants' respective products were cleared. Defendants deny the remaining allegations of Paragraph 45 of the Complaint.

46.     Defendants deny the allegations of Paragraph 46 of the Complaint.

**Jeffrey Johnson Separates from Precision Spine**

47.     Johnson admits that he is a former founding member of Spinal and that he served as President, Secretary and Treasurer of Spinal for a period of time. Johnson admits that he was removed as an officer from Spinal by its Board of Directors. Defendants deny the remaining allegations of Paragraph 47 of the Complaint.

48.      Johnson admits that after his removal from Spinal that he retained his membership interest in the company. Johnson admits that the terms of the Operating Agreement speak for themselves. Defendants have no obligation to respond to statements of law. However,

out of an abundance of caution, to the extent a response to a statement of law is required, Defendants admit that the law speaks for itself.  Defendants deny the remaining allegations of Paragraph 48 of the Complaint.

49.     Johnson admits that he entered into a Settlement Agreement with Spinal and two other entities in January 2011.  Johnson admits that the terms of the Settlement Agreement speak for themselves.  Defendants deny the remaining allegations of Paragraph 49 of the Complaint.

50.     Johnson admits that he entered into a Settlement Agreement with Spinal and two other entities in January 2011.  Johnson admits that the terms of the Settlement Agreement speak for themselves.  Defendants deny the remaining allegations of Paragraph 50 of the Complaint.

51.     Johnson admits that he entered into a Settlement Agreement with Spinal and two other entities in January 2011.  Johnson admits that the terms of the Settlement Agreement speak for themselves.  Defendants deny the remaining allegations of Paragraph 51 of the Complaint.

52.     Johnson admits that he entered into a Settlement Agreement with Spinal and two other entities in January 2011.  Johnson admits that the terms of the Settlement Agreement speak for themselves.  Defendants deny the remaining allegations of Paragraph 52 of the Complaint.

53.     Johnson admits that he entered into a Settlement Agreement with Spinal and two other entities in January 2011.  Johnson admits that the terms of the Settlement Agreement speak for themselves.  Defendants deny the remaining allegations of Paragraph 53 of the Complaint.

**Johnson Secretly Forms Zavation, Which He Conceals From Spinal When He Enters Into the Settlement Agreement**.

54.     Johnson admits that he publically created Zamedica on or about July 30, 2010 for the purpose and intent to design and sell spinal products that did not compete with Spinal.  After Spinal objected to his plans, Johnson admits that he then decided to use Zamedica in order to sell spinal products outside of the United States.  Johnson admits that he publically changed the name

13

from Zamedica to Zavation in early 2011.  Johnson admits that he entered into a Settlement Agreement with Spinal and two other entities in January 2011.  Johnson admits that the terms of the Settlement Agreement speak for themselves.  Defendants deny the remaining allegations of Paragraph 54 of the Complaint.

55.     Johnson and Zavation admit that the filings with the United States Patent and Trademark Office speak for themselves.  Defendants deny the remaining allegations of Paragraph 55 of the Complaint.

56.     Johnson admits that he publically created Zamedica on or about July 30, 2010 for the purpose and intent to design and sell spinal products that did not compete with Spinal.  After Spinal objected to his plans, Johnson admits that he then decided to use Zamedica in order to sell spinal products outside of the United States.  Johnson admits that he publically changed the name from Zamedica to Zavation in early 2011.  Johnson admits that he entered into a Settlement Agreement with Spinal and two other entities in January 2011.  Johnson admits that the terms of the Settlement Agreement speak for themselves.  Johnson and Zavation admit that the filings with the United States Patent and Trademark Office speak for themselves.  Defendants deny the remaining allegations of Paragraph 56 of the Complaint.

57.     Defendants deny the allegations of Paragraph 57 of the Complaint.

**Johnson Commences a Campaign to Unlawfully Compete With Precision Spine, Never Once Honoring the Covenants in the Settlement Agreement.**

58.     Defendants deny the allegations of Paragraph 58 of the Complaint.

59.     Defendants deny the allegations of Paragraph 59 of the Complaint.

60.     Defendants deny the allegations of Paragraph 60 of the Complaint.

61.     Defendants admit that the terms of any "employment agreement" between Walker and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 61 of the Complaint.

62.     Defendants admit that the terms of any "employment agreement" between Walker and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 62 of the Complaint.

63.     Defendants admit that the terms of any "employment agreement" between Walker and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 63 of the Complaint.

64.     Defendants admit that the terms of any "employment agreement" between Walker and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 64 of the Complaint.

**Zavation Seeks FDA Approval For Competing Spinal Products Months After Walker Joined Forces with Johnson**

65.     Zavation admits that its 510(k) filings with the FDA speak for themselves.  Defendants deny the remaining allegations of Paragraph 65 of the Complaint.

66.     Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 66 of the Complaint and, therefore, deny the same.

67.     Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 67 of the Complaint and, therefore, deny the same.

68.     Defendants deny the allegations of Paragraph 68 of the Complaint.

69.     Zavation admits that it has developed a number of spinal products.  Zavation admits that there are numerous manufacturers of non-patented, standard spinal devices that are substantially similar, if not identical, in the market.  Zavation admits that all of the spinal

15

products that it manufactures may be easily reverse engineered by a competitor.   Defendants deny the remaining allegations of Paragraph 69 of the Complaint.

70.     Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 70 of the Complaint and, therefore, deny the same.

71.     Defendants deny the allegations of Paragraph 71 of the Complaint.


**Zavation Obtains Approval For its Uniplate in April 2013**

72.     Defendants deny the allegations of Paragraph 72 of the Complaint.

73.     Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 73 of the Complaint and, therefore, deny the same.

74.     Defendants deny the allegations of Paragraph 74 of the Complaint.

**Johnson and Zavation Raid Precision Spine's Workforce, Tortiously Interfere With the Confidentiality Obligations Owed by These Workers to Precision Spine, and Misappropriate Precision Spine's Confidential Information**

75.     Zavation admits that there are numerous manufacturers of non-patented, standard spinal devices that are substantially similar, if not identical, in the market.  Zavation admits that all of the spinal products that it manufactures may be easily reverse engineered by a competitor. Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 75 of the Complaint as to steps taken by Plaintiffs or other companies and, therefore, deny the same.  Defendants deny the remaining allegations of Paragraph 75 of the Complaint.

76.     Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 76 and, therefore, deny the same.

77.     Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 77 and, therefore, deny the same.

78.     Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 78 and, therefore, deny the same.

79.     Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 79 and, therefore, deny the same.

80.     Zavation admits that it has hired Frankie Cummins, Kyle Johnson, Milton Phillips, Ryan Ratcliffe and Mike Carroll as employees.  Zavation admits that it has used Scott Smith as a consultant.  J2 admits that it has hired Jerry Page as an employee.  Defendants deny the remaining allegations of Paragraph 80 of the Complaint.

81.     Defendants deny the allegations of Paragraph 81 of the Complaint.

82.     Defendants deny the allegations of Paragraph 82 of the Complaint.

### *James Milton Phillips*

83.     Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 83 and, therefore, deny the same.

84.     Defendants admit that the terms of the agreement between Phillips and Plaintiffs speak for itself.  Defendants deny the remaining allegations of Paragraph 84 of the Complaint.

85.     Defendants admit that the terms of the agreement between Phillips and Plaintiffs speak for itself.  Defendants deny the remaining allegations of Paragraph 85 of the Complaint.

86.     Defendants admit that the terms of the agreement between Phillips and Plaintiffs speak for itself.  Defendants deny the remaining allegations of Paragraph 86 of the Complaint.

87.     Defendants admit that the terms of the agreement between Phillips and Plaintiffs speak for itself.  Defendants deny the remaining allegations of Paragraph 87 of the Complaint.

88.     Defendants admit that the terms of the "employment agreement", if any, between Phillips and Plaintiffs speak for itself.  Defendants deny the remaining allegations of Paragraph 88 of the Complaint.

89.     Defendants admit that the terms of the agreement between Phillips and Plaintiffs speak for itself.  Regarding the remaining allegations of Paragraph 89 of the Complaint, Defendants are without sufficient information or knowledge to admit or deny the allegations and, therefore, deny the same.

90.     Zavation admits that Phillips currently works for it.  Defendants deny the remaining allegations of Paragraph 90.

91.     Regarding the first two sentences of Paragraph 91 of the Complaint, Defendants are without sufficient information or knowledge to admit or deny the allegations and, therefore, deny the same.   Zavation admits that its 510(k) filings with the FDA speak for themselves. Regarding the last sentence of Paragraph 91 of the Complaint, Defendants are without sufficient information or knowledge to admit or deny the allegations and, therefore, deny the same.

92.     Defendants deny the allegations of Paragraph 92 of the Complaint.

*93.*     Defendants deny the allegations of Paragraph 93 of the Complaint.

### *John "Frankie" Cummins*

94.     Regarding the allegations of Paragraph 94 of the Complaint, Defendants are without sufficient information or knowledge to admit or deny the allegations and, therefore, deny the same.

95.     Regarding the allegations of Paragraph 95 of the Complaint, Defendants are without sufficient information or knowledge to admit or deny the allegations and, therefore, deny the same.

96.     Defendants admit that the terms of the agreement between Cummins and Plaintiffs speak for itself.  Defendants deny the remaining allegations of Paragraph 96 of the Complaint.

97.     Defendants admit that the terms of the agreement between Cummins and Plaintiffs speak for itself.  Defendants deny the remaining allegations of Paragraph 97 of the Complaint.

98.     Defendants admit that the terms of the agreement between Cummins and Plaintiffs speak for itself.  Defendants deny the remaining allegations of Paragraph 98 of the Complaint.

99.     Defendants admit that the terms of the agreement between Cummins and Plaintiffs speak for itself.  Defendants deny the remaining allegations of Paragraph 99 of the Complaint.

100.    Defendants admit that the terms of the "employment agreement", if any, between Cummins and Plaintiffs speak for itself.  Defendants deny the remaining allegations contained of Paragraph 100 of the Complaint.

101.    Defendants admit that the terms of the agreement between Cummins and Plaintiffs speak for itself.  Regarding the remaining allegations of Paragraph 101 of the Complaint, Defendants are without sufficient information or knowledge to admit or deny the allegations and, therefore, deny the same.

102.    Regarding the allegations of Paragraph 102 of the Complaint, Defendants are without sufficient information or knowledge to admit or deny the allegations and, therefore, deny the same.

103.     Regarding the allegations of Paragraph 103 of the Complaint, Defendants are without sufficient information or knowledge to admit or deny the allegations and, therefore, deny the same.

104.     Regarding the allegations of Paragraph 104 of the Complaint, Defendants are without sufficient information or knowledge to admit or deny the allegations and, therefore, deny the same.

105.     Zavation admits that Cummins worked for it for a period of time as a consultant and that he currently works for it as an employee.  Defendants deny the remaining allegations of Paragraph 105 of the Complaint.

106.     Regarding the allegations of Paragraph 106 of the Complaint, Defendants are without sufficient information or knowledge to admit or deny the allegations and, therefore, deny the same.

107.     Zavation admits that its 510(k) filings with the FDA speak for themselves. Regarding the last sentence of Paragraph 107 of the Complaint, Defendants are without sufficient information or knowledge to admit or deny the allegations and, therefore, deny the same. Defendants deny the remaining allegations of Paragraph 107 of the Complaint.

108.     Regarding the allegations of Paragraph 108 of the Complaint, Defendants are without sufficient information or knowledge to admit or deny the allegations as to what Plaintiffs "recently learned" and, therefore, deny the same.  Defendants deny the remaining allegations of Paragraph 108.

109.     Zavation and Johnson admit that the terms of the agreement between Cummins and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 109.

110.    Defendants deny the allegations of Paragraph 110 of the Complaint.

### *Justin Kyle Johnson*

111.    Defendants are without sufficient information and knowledge to form a belief as to the truth of the allegations of Paragraph 111 and, therefore, deny the same.

112.    Defendants admit that the terms of the agreement between Johnson and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 112 of the Complaint.

113.    Defendants admit that the terms of the agreement between Johnson and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 113 of the Complaint.

114.    Defendants admit that the terms of the agreement between Johnson and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 114 of the Complaint.

115.    Defendants admit that the terms of the agreement between Johnson and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 115 of the Complaint.

116.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 116 and, therefore, deny the same.

117.    Defendants deny the allegations of Paragraph 117.

118.    Zavation and Johnson admit that Kyle Johnson is an employee of Zavation.  J2 admits that Kyle Johnson is the President of J2.  Defendants deny the remaining allegations of Paragraph 118 of the Complaint.

119.    Defendants are without sufficient information and knowledge to form a belief as to the truth of the allegations of Paragraph 119 as to what Plaintiffs "recently discovered" and, therefore, deny the same. Defendants deny the remaining allegations of Paragraph 119 of the Complaint.

120.    Defendants deny the allegations of Paragraph 120 of the Complaint.

121.    Defendants deny the allegations of Paragraph 121 of the Complaint.

122.    Defendants are without sufficient information and knowledge to form a belief as to the truth of the allegations of Paragraph 122 of the Complaint and, therefore, deny the same.

123.    Defendants deny the allegations of Paragraph 123 of the Complaint.

124.    Defendants deny the allegations of Paragraph 124 of the Complaint.

125.    Defendants deny the allegations of Paragraph 125 of the Complaint.

### ***Claude Scott Smith***

126.    Defendants are without sufficient knowledge and information to form a belief as to the truth of the allegations of Paragraph 126 and, therefore, deny the same.

127.    Defendants admit that the agreement between Smith and the Plaintiffs speak for themselves.  Defendants deny the remaining allegations contained of Paragraph 127 of the Complaint.

128.    Defendants admit that the agreement between Smith and the Plaintiffs speak for themselves.  Defendants deny the remaining allegations contained of Paragraph 128 of the Complaint.

129.    The document referenced of Paragraph 129 speaks for itself.  Defendants deny the allegations contained of Paragraph 129 of the Complaint.

130.     Defendants are without sufficient knowledge and information to form a belief as to the truth of the allegations of Paragraph 130, and therefore deny the same.

131.     Defendants deny the allegations of Paragraph 131 of the Complaint.

132.     Defendants deny the allegations of Paragraph 132 of the Complaint.

133.     Defendants deny the allegations of Paragraph 133 of the Complaint.

### *Ryan Ratcliff*

134.     Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations of Paragraph 134 and, therefore, deny the same.

135.     Defendants admit that the terms of agreement between Ratcliff and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 135 of the Complaint.

136.     Defendants admit that the terms of the agreement between Ratcliff and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 136 of the Complaint.

137.     Defendants admit that the terms of the agreement between Ratcliff and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 137 of the Complaint.

138.     Defendants admit that the terms of the agreement between Ratcliff and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 138 of the Complaint.

139.     Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations of Paragraph 139 and, therefore, deny the same.

140.     Zavation admits that Ratcliff is one of its employees.  Defendants deny the remaining allegations of Paragraph 140 of the Complaint.

141.     Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations of Paragraph 141 and, therefore, deny the same.

142.     Defendants deny the allegations of Paragraph 142 of the Complaint.

### *Jerry Page and Mike Carroll*

143.     Defendants deny the allegations of Paragraph 143 of the Complaint.

144.     J2 admits that Page is one of its employees.  Zavation admits that Carroll is one of its employees.  Defendants deny the remaining allegations of Paragraph 144 of the Complaint.

145.     Defendants admit that the terms of the agreement between Page and the Plaintiffs and the agreement between Carroll and the Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 145 of the Complaint.

146.     Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations of Paragraph 146 and, therefore, deny the same.

147.     Defendants deny the allegations of Paragraph 147 of the Complaint.

148.     Defendants deny the allegations of Paragraph 148 of the Complaint.

**Zavation and J2 Obtain Precision Spine's Confidential Information and Trade Secrets to Facilitate Zavation's Development and Manufacture of a Competing Posterior Cervical System**

149.     Defendants deny the allegations of Paragraph 149 of the Complaint.

### *John Wilson*

150.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 150 and, therefore, deny the same.

151.     Defendants deny the allegations of Paragraph 151 of the Complaint.

24

152.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 152 and, therefore, deny the same.

153.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 153 as to what Plaintiffs have "now learned" and, therefore, deny the same.  Defendants deny the remaining allegations of Paragraph 153 of the Complaint.

154.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 154 and, therefore, deny the same.

155.    Defendants deny the allegations of Paragraph 155 of the Complaint.

156.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 156 as to any statements by Wilson and, therefore, deny the same.  Defendants deny the remaining allegations of Paragraph 156 of the Complaint.

157.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 157 and, therefore, deny the same.

158.    Defendants admit that the terms of the agreement between Wilson and Plaintiffs speaks for themselves.  Defendants deny the remaining allegations of Paragraph 158 of the Complaint.

159.    Defendants deny the allegations of Paragraph 159 of the Complaint.

160.    Defendants deny the allegations of Paragraph 160 of the Complaint.

161.    Defendants deny the allegations of Paragraph 161 of the Complaint.

162.    Defendants deny the allegations of Paragraph 162 of the Complaint.

### *James Cochran*

163.    Defendants admit that the terms of the agreement between Cochran and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 163 of the Complaint.

164.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 164 as to what Plaintiffs "recently learned" and, therefore, deny the same.  Defendants deny the remaining allegations of Paragraph 164 of the Complaint.

165.    J2 admits that the information contained in the e-mail communications between Cochran and Kyle Johnson speaks for itself.  Defendants deny the remaining allegations of Paragraph 165 of the Complaint.

166.    J2 admits that the information contained in the e-mail communications between Cochran and Kyle Johnson speaks for itself.  Defendants deny the remaining allegations of Paragraph 166 of the Complaint.

167.    J2 admits that the information contained in the e-mail communications between Cochran and Kyle Johnson speaks for itself.  Defendants deny the remaining allegations of Paragraph 167 of the Complaint.

168.    Defendants deny the allegations of Paragraph 168 of the Complaint.

169.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 169 as to what Plaintiffs "has learned" and, therefore, deny the same.  Defendants deny the remaining allegations of Paragraph 169 of the Complaint.

170.    Defendants deny the allegations of Paragraph 170 of the Complaint.

171.    Defendants deny the allegations of Paragraph 171 of the Complaint.

172.    Defendants deny the allegations of Paragraph 172 of the Complaint.

173.    Defendants deny the allegations of Paragraph 173 of the Complaint.

174.    Defendants deny the allegations of Paragraph 174 of the Complaint.

**Zavation and J2 have Harmed and Continue to Harm Precision Spine**

175.    Defendants deny the allegations of Paragraph 175 of the Complaint.

176.    Defendants deny the allegations of Paragraph 176 of the Complaint.

177.    Defendants deny the allegations of Paragraph 177 of the Complaint.

178.    Defendants deny the allegations of Paragraph 178 of the Complaint.  Defendants likewise deny any inference in Paragraph 178 that it was ever committing any tortious conduct or unfair competition.

**COUNT ONE**
**(Against Johnson and Zavation)**
**(Tortious Interference with Contract between Spinal and Phillips)**

179.    Defendants incorporate by reference its response to all paragraphs above as if fully stated herein.

180.    Defendants admit that the terms of the agreement between Phillips and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 180 of the Complaint.

181.    Defendants deny the allegations of Paragraph 181 of the Complaint.

182.    Defendants deny the allegations of Paragraph 182 of the Complaint.

183.    Defendants deny the allegations of Paragraph 183 of the Complaint.

184.    Defendants deny the allegations of Paragraph 184 of the Complaint.

**COUNT TWO**
**(Against Johnson and Zavation)**
**(Tortious Interference with Contract between Spinal and Cummins)**

185.    Defendants incorporate by reference its response to all paragraphs above as if fully stated herein.

186.    Defendants admit that the terms of the agreement between Cummins and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 186 of the Complaint.

187.    Defendants deny the allegations of Paragraph 187 of the Complaint.

188.    Defendants deny the allegations of Paragraph 188 of the Complaint.

189.    Defendants deny the allegations of Paragraph 189 of the Complaint.

190.    Defendants deny the allegations of Paragraph 190 of the Complaint.

**COUNT THREE**
**(Against Johnson and Zavation)**
**(Tortious Interference with Contract between Spinal and Kyle Johnson)**

191.    Defendants incorporate by reference its response to all paragraphs above as if fully stated herein.

192.    Defendants admit that the terms of the agreement between Kyle Johnson and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 192 of the Complaint.

193.    Defendants deny the allegations of Paragraph 193 of the Complaint.

194.    Defendants deny the allegations of Paragraph 194 of the Complaint.

195.    Defendants deny the allegations of Paragraph 195 of the Complaint.

196.    Defendants deny the allegations of Paragraph 196 of the Complaint.

197.    Defendants deny the allegations of Paragraph 197 of the Complaint.

## COUNT FOUR
### (Against Johnson and Zavation)
### (Tortious Interference with Contract between Spinal and Smith)

198.    Defendants incorporate by reference its response to all paragraphs above as if fully stated herein.

199.    Defendants admit that the terms of the agreement between Smith and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 199 of the Complaint.

200.    Defendants admit that the terms of the agreement between Smith and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 200 of the Complaint.

201.    Defendants deny the allegations of Paragraph 201 of the Complaint.

202.    Defendants deny the allegations of Paragraph 202 of the Complaint.

203.    Defendants deny the allegations of Paragraph 203 of the Complaint.

204.    Defendants deny the allegations of Paragraph 204 of the Complaint.

## COUNT FIVE
### (Against Johnson and Zavation)
### (Tortious Interference with Contract between Spinal and Ratcliff)

205.    Defendants incorporate by reference its response to all paragraphs above as if fully stated herein.

206.    Defendants admit that the terms of the agreement between Ratcliff and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 206 of the Complaint.

207.    Defendants deny the allegations of Paragraph 207 of the Complaint.

208.    Defendants deny the allegations of Paragraph 208 of the Complaint.

29

209.    Defendants deny the allegations of Paragraph 209 of the Complaint.

210.    Defendants deny the allegations of Paragraph 210 of the Complaint.

## COUNT SIX
### (Against Johnson and Zavation)
### (Tortious Interference with Contract between Spinal and Carroll)

211.    Defendants incorporate by reference its response to all paragraphs above as if fully stated herein.

212.    Defendants admit that the terms of the agreement between Carroll and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 212 of the Complaint.

213.    Defendants deny the allegations of Paragraph 213 of the Complaint.

214.    Defendants deny the allegations of Paragraph 214 of the Complaint.

215.    Defendants deny the allegations of Paragraph 215 of the Complaint.

216.    Defendants deny the allegations of Paragraph 216 of the Complaint.

217.    Defendants deny the allegations of Paragraph 217 of the Complaint.

## COUNT SEVEN
### (Against Johnson and J2)
### (Tortious Interference with Contract between PSI and Page)

218.    Defendants incorporate by reference its response to all paragraphs above as if fully stated herein.

219.    Defendants admit that the terms of the agreement between Page and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 219 of the Complaint.

220.    Defendants deny the allegations of Paragraph 220 of the Complaint.

221.    Defendants deny the allegations of Paragraph 221 of the Complaint.

222.    Defendants deny the allegations of Paragraph 222 of the Complaint.

223.    Defendants deny the allegations of Paragraph 223 of the Complaint.

## COUNT EIGHT
### (Against Johnson and Zavation)
### (Tortious Interference with Contract between Spinal and Wilson)

224.    Defendants incorporate by reference its response to all paragraphs above as if fully stated herein.

225.    Defendants admit that the terms of the agreement between Wilson and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 225 of the Complaint.

226.    Defendants deny the allegations of Paragraph 226 of the Complaint.

227.    Defendants deny the allegations of Paragraph 227 of the Complaint.

228.    Defendants deny the allegations of Paragraph 228 of the Complaint.

229.    Defendants deny the allegations of Paragraph 229 of the Complaint.

## COUNT NINE
### (Against All Defendants)
### (Tortious Interference with Contract between Spinal and Cochran)

230.    Defendants incorporate by reference its response to all paragraphs above as if fully stated herein.

231.    Defendants admit that the terms of the agreement between Cochran and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 231 of the Complaint.

232.    Defendants deny the allegations of Paragraph 232 of the Complaint.

233.    Defendants deny the allegations of Paragraph 233 of the Complaint.

234.    Defendants deny the allegations of Paragraph 234 of the Complaint.

31

235.     Defendants deny the allegations of Paragraph 235 of the Complaint.

## COUNT TEN
### (Against Johnson and Zavation)
### (Tortious Interference with Contract between Spinal and Walker)

236.     Defendants incorporate by reference its response to all paragraphs above as if fully stated herein.

237.     Defendants admit that the terms of the agreement between Walker and Plaintiffs speak for themselves.  Defendants deny the remaining allegations of Paragraph 237 of the Complaint.

238.     Defendants deny the allegations of Paragraph 238 of the Complaint.

239.     Defendants deny the allegations of Paragraph 239 of the Complaint.

240.     Defendants deny the allegations of Paragraph 240 of the Complaint.

241.     Defendants deny the allegations of Paragraph 241 of the Complaint.

## COUNT ELEVEN
### (Against All Defendants)
### (Misappropriation of Trade Secrets and Confidential Information)

242.     Defendants incorporate by reference its response to all paragraphs above as if fully stated herein.

243.     Defendants deny the allegations of Paragraph 243 of the Complaint.

244.     Defendants deny the allegations of Paragraph 244 of the Complaint.

245.     Defendants deny the allegations of Paragraph 245 of the Complaint.

246.     Defendants deny the allegations of Paragraph 246 of the Complaint.

247.     Defendants deny the allegations of Paragraph 247 of the Complaint.

248.     Defendants deny the allegations of Paragraph 248 of the Complaint.

249.     Defendants deny the allegations of Paragraph 249 of the Complaint.

250.    Defendants deny the allegations of Paragraph 250 of the Complaint.

## COUNT TWELVE
### (Against All Defendants)
**(Misappropriation of Trade Secrets and Confidential Information
in Violation of N.J.S.A. 56:15-1, *et seq*. and/or Miss. Code § 75-26-1, *et seq.*)**

251.    Defendants incorporate by reference its response to all paragraphs above as if fully stated herein.

252.    Defendants deny the allegations of Paragraph 252 of the Complaint.

253.    Defendants deny the allegations of Paragraph 253 of the Complaint.

254.    Defendants deny the allegations of Paragraph 254 of the Complaint.

255.    Defendants deny the allegations in Paragraph 255 of the Complaint.

## COUNT THIRTEEN
### (Against All Defendants)
**(Tortious Interference with Prospective Economic Advantage)**

256.    Defendants incorporate by reference its response to all paragraphs above as if fully stated herein.

257.    Defendants deny the allegations of Paragraph 257 of the Complaint.

258.    Defendants deny the allegations of Paragraph 258 of the Complaint.

259.    Defendants deny the allegations of Paragraph 259 of the Complaint.

260.    Defendants deny the allegations of Paragraph 260 of the Complaint.

## COUNT FOURTEEN
### (Against Johnson and Zavation)
**(Aiding and Abetting Breach of Fiduciary Duty by Kyle Johnson)**

261.    Defendants incorporate by reference its response to all paragraphs above as if fully stated herein.

262.    Defendants have no obligation to respond to statements of law.  However, out of an abundance of caution, to the extent a response to a statement of law is required, Defendants

admit that the law speaks for itself.  Defendants deny the remaining allegations of Paragraph 262 of the Complaint.

263.    Defendants deny the allegations of Paragraph 263 of the Complaint.

264.    Defendants deny the allegations of Paragraph 264 of the Complaint.

265.    Defendants deny the allegations of Paragraph 265 of the Complaint.

266.    Defendants deny the allegations of Paragraph 266 of the Complaint.

**COUNT FIFTEEN**
**(Against Johnson and Zavation)**
**(Aiding and Abetting Breach of Fiduciary Duty by John Wilson)**

267.    Defendants incorporate by reference its response to all paragraphs above as if fully stated herein.

268.    Defendants deny the allegations of Paragraph 268 of the Complaint.

269.    Defendants have no obligation to respond to statements of law.  However, out of an abundance of caution, to the extent a response to a statement of law is required, Defendants admit that the law speaks for itself.  Defendants deny the remaining allegations of Paragraph 269 of the Complaint.

270.    Defendants deny the allegations of Paragraph 270 of the Complaint.

271.    Defendants deny the allegations of Paragraph 271 of the Complaint.

272.    Defendants deny the allegations of Paragraph 272 of the Complaint.

**COUNT SIXTEEN**
**(Against J2)**
**(Aiding and Abetting Breach of Fiduciary Duty by James Cochran)**

273.    Defendants incorporate by reference its response to all paragraphs above as if fully stated herein.

34

274.     Defendants have no obligation to respond to statements of law.  However, out of an abundance of caution, to the extent a response to a statement of law is required, Defendants admit that the law speaks for itself.  Defendants deny the remaining allegations of Paragraph 274 of the Complaint.

275.     Defendants deny the allegations of Paragraph 275 of the Complaint.

276.     Defendants deny the allegations of Paragraph 276 of the Complaint.

277.     Defendants deny the allegations of Paragraph 277 of the Complaint.

278.     Defendants deny the allegations of Paragraph 278 of the Complaint.

**COUNT SEVENTEEN**
**(Unfair Competition)**

279.     Defendants incorporate by reference its response to all paragraphs above as if fully stated herein.

280.     Defendants deny the allegations of Paragraph 28O of the Complaint.

281.     Defendants deny the allegations of Paragraph 281 of the Complaint.

282.     Defendants deny the allegations of Paragraph 282 of the Complaint.

283.     Defendants deny the allegations of Paragraph 283 of the Complaint.

284.     Defendants deny the allegations of Paragraph 284 of the Complaint.

**COUNT EIGHTEEN**
**(Breach of Contract against Johnson)**

285.     Defendants incorporate by reference its response to all paragraphs above as if fully stated herein.

286.     Johnson admits that the terms of the Settlement Agreement speak for themselves. Defendants deny the remaining allegations of Paragraph 286 of the Complaint.

287.     Defendants deny the allegations of Paragraph 287 of the Complaint.

288.     Defendants deny the allegations of Paragraph 288 of the Complaint.

289.     Defendants deny the allegations of Paragraph 289 of the Complaint.

290.     Defendants deny the allegations of Paragraph 290 of the Complaint.

291.     Defendants deny the allegations of Paragraph 291 of the Complaint.

## COUNT NINETEEN
### (Breach of Good Faith and Fair Dealing against Johnson)

292.     Defendants incorporate by reference its response to all paragraphs above as if
fully stated herein.

293.     Johnson admits that the terms of the Settlement Agreement speak for themselves.
Defendants deny the remaining allegations of Paragraph 293 of the Complaint.

294.     Defendants deny the allegations of Paragraph 294 of the Complaint.

295.     Defendants deny the allegations of Paragraph 295 of the Complaint.

296.     Defendants deny the allegations of Paragraph 296 of the Complaint.

297.     Defendants deny the allegations of Paragraph 297 of the Complaint.

## COUNT TWENTY
### (Fraud in the Inducement against Johnson)

298.     Defendants incorporate by reference its response to all paragraphs above as if
fully stated herein.

299.     Defendants deny the allegations of Paragraph 299 of the Complaint.

300.     Defendants deny the allegations of Paragraph 300 of the Complaint.

301.     Defendants deny the allegations of Paragraph 301 of the Complaint.

302.     Defendants deny the allegations of Paragraph 302 of the Complaint.

303.     Defendants deny the allegations of Paragraph 303 of the Complaint.

Defendants deny the allegations in the unnumbered paragraph beginning "WHEREFORE," including subparts a – g, thereto and specifically deny that plaintiffs are entitled to any relief from this Court whatsoever.

### TWENTY-FIFTH DEFENSE

Plaintiffs' claims are barred in whole or in part because they failed to mitigate their alleged damages, if any.

### TWENTY-SIXTH DEFENSE

Any liability to which Defendants are subject is limited to the applicable amount under the relevant statutes, common law, and any other legal authority regarding limitation of awards, caps on recovery, joint and several liability, apportionment of damages, proportionate responsibility doctrines, appropriate set-offs for prior settlements, the one satisfaction rule, any and all doctrines of contribution and indemnity and similar doctrines and provisions under any applicable law.

### TWENTY-SEVENTH DEFENSE

Defendants plead all limitations and exclusions on the types of damages recoverable under applicable law.

### TWENTY-EIGHTH DEFENSE

Defendants plead all rights and defenses provided by Miss. Code Ann. § 11-1-65 or any other applicable law with respect to Plaintiffs' claim for punitive damages.

### TWENTY-NINTH DEFENSE

Plaintiffs' recovery, if any, should be reduced by their own comparative negligence or fault. Defendants invoke the provisions of Miss. Code Ann. § 85-5-7 and any other statute on

apportionment of fault as to all parties and non-parties who may be jointly or severally liable for Plaintiffs' alleged injuries.

## THIRTIETH DEFENSE

Plaintiffs have not specifically stated their special damages, if any, as required by the applicable rules, including, but not limited to Fed. R. Civ. P. 9(g).  Accordingly, Plaintiffs are barred from recovering any such damages.

## THIRTY-FIRST DEFENSE

Plaintiffs' claims for special damages are not recoverable under the common law as stated in *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854).

## THIRTY-SECOND DEFENSE

Defendants invoke all rights afforded under Mississippi's 1993 Tort Reform Act, including but not limited to Miss. Code Ann. § 11-1-65, and under Mississippi's 2002 and 2003 Tort Reform Acts.

## THIRTY-THIRD DEFENSE

Punitive damages, as permitted under the substantive law of the State of Mississippi, violate the due process, equal protection, and excessive fines clauses of the constitutions of the United States of America and the State of Mississippi.

## THIRTY-FOURTH DEFENSE

No act or omission of Defendants was malicious, willful, wanton, reckless or grossly negligent and, therefore, any award of punitive damages is barred.  Additionally, because of the lack of clear standards, the imposition of punitive damages against Defendants is unconstitutionally vague and/or over-broad.

### THIRTY-FIFTH DEFENSE

Defendants specifically incorporate by reference any and all standards or limitations regarding the determination and enforceability of punitive damage awards which arose in the decision of *BMW of North America v. Gore*, 116 S. Ct. 1589 (1996), *State Farm v. Campbell*, 123 S. Ct. 1513 (2003), and their progeny.

### THIRTY-SIXTH DEFENSE

Any claim for punitive damages cannot be sustained because an award of punitive damages under Mississippi law without proof of every element of such claim beyond a reasonable doubt would violate Defendants' due process rights under the Fourteenth Amendment to the United States Constitution and under Article 3, § 14 of the Constitution of the State of Mississippi.

### THIRTY-SEVENTH DEFENSE

Alternatively, unless all of Defendants' alleged liability for punitive damages and the appropriate amount of punitive damages to be assessed are required to be established by clear and convincing evidence, any award of punitive damages would violate Defendants' due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Article 3, § 14 of the Constitution of the State of Mississippi.

### THIRTY-EIGHTH DEFENSE

Any claim for punitive damages cannot be sustained because an award of punitive damages under Mississippi law subject to an excessive pre-determined upper limit would violate Defendants' due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Article 3, § 14 of the Constitution of the State of Mississippi, and may result in a violation of Defendants' right not to be subjected to an excessive award in violation of the

Excessive Fines Clause of the Eighth Amendment to the United States Constitution and Article 3, § 28 of the Constitution of the State of Mississippi.

## THIRTY-NINTH DEFENSE

Any claim for punitive damages cannot be sustained because an award of punitive damages under Mississippi law by a fact finder that is not provided with standards of sufficient clarity and uniformity for determining the appropriateness or the appropriate size of a punitive damage award would violate Defendants' due process and equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Article 3, § 14 of the Constitution of the State of Mississippi.

## FOURTIETH DEFENSE

Any claim for punitive damages cannot be sustained because an award of punitive damages under Mississippi law by a fact finder that is not instructed on the limits of punitive damages imposed by the applicable principles of deterrence and punishment and is not instructed to award only that amount of punitive damages as reflects a necessary relationship between the amount of punitive damages and the actual harm in question would violate Defendants' due process and equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Article 3, § 14 of the Constitution of the State of Mississippi.

## FORTY-FIRST DEFENSE

Any claim for punitive damages cannot be sustained because an award of punitive damages under Mississippi law by a fact finder that is not expressly prohibited from awarding punitive damages, in whole or in part, on the basis of an invidiously discriminatory characteristic, including Defendants' corporate status, would violate Defendants' due process

and equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Article 3, § 14 of the Constitution of the State of Mississippi.

### FORTY-SECOND DEFENSE

Any claim for punitive damages cannot be sustained because an award of punitive damages under Mississippi law by a fact finder that is permitted to award punitive damages under standards for determining liability for, and the amount of, punitive damages that are vague, imprecise, inconsistent and arbitrary and do not define with sufficient clarity to give advance notice to a potential Defendant of the prohibited conduct or mental state that makes an award of punitive damages possible, would violate Defendants' due process and equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Article 3, § 14 of the Constitution of the State of Mississippi.

### FORTY-THIRD DEFENSE

Any claim for punitive damages cannot be sustained because an award of punitive damages under Mississippi law by a fact finder that is not subject to trial and appellate court review on the basis of uniform and objective standards would violate Defendants' due process and equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Article 3, § 14 of the Constitution of the State of Mississippi.

### FORTY-FOURTH DEFENSE

Any claim for punitive damages cannot be sustained because an award of punitive damages under Mississippi law without affording Defendant protections similar to those that are accorded to criminal respondents, including, but not limited to, the protection against unreasonable searches and seizures, double jeopardy or impermissible multiple punishments and compelled self-incrimination, and the right to confront adverse witnesses, to compulsory process

41

for favorable witnesses, and to the effective assistance of counsel, would violate Defendants' rights guaranteed by the Fourteenth Amendment to the United States Constitution and the Fourth, Fifth and Sixth Amendments as incorporated into the Fourteenth Amendment to the United States Constitution and under Article 3, §§ 14, 22, 26 and 31 of the Constitution of the State of Mississippi.

## FORTY-FIFTH DEFENSE

Any claim for punitive damages is barred by Miss. Code Ann. § 15-1-33 (1972), requiring that any suit for penalty be brought within one year from the date of the alleged offense.

## FORTY-SIXTH DEFENSE

Some or all of Plaintiffs' claims are barred by the economic loss and/or impact rule(s).

## FORTY-SEVENTH DEFENSE

Defendants demand a jury trial of issues so triable.

## FORTY-EIGHTH DEFENSE

Defendants reserve the right to assert and/or plead additional affirmative defenses as they may become known during the course of litigation.

AND NOW, having answered the averments of the Complaint and having pled its defenses, Defendants deny that they are liable to Plaintiffs in any amount and further deny that Plaintiffs are entitled to any recovery whatsoever.  Defendants demand that the Complaint be dismissed with prejudice.

## COUNTERCLAIM

COMES NOW Zavation, Inc. ("Zavation"), Jeffrey Johnson ("Johnson") and J2 Manufacturing LLC ("J2"), positioned herein as Counter-Plaintiffs, and assert the following

Counterclaim against Precision Spine, Inc. ("Precision") and Spinal USA, Inc. f/k/a Spinal USA, LLC ("Spinal"). Zavation, Johnson and J2 would show:

## JURISDICTION

### *Subject Matter - Counterclaim*

1.      Zavation is a Mississippi corporation with its principal place of business located at 220 Lakeland Parkway, Flowood, MS  39232.

2.      Johnson is a natural person and a resident citizen solely of the State of Mississippi.

3.      J2 is a Mississippi limited liability company, with its principal place of business located at 304 Deer Hollow, Brandon, MS 39047.  Kyle Johnson, who resides in Mississippi, is the sole member of J2.

4.      Precision is a Delaware corporation with its principal place of business located in New Jersey.

5.      Spinal is a Delaware corporation with its principal place of business located in New Jersey.  Spinal has a facility and operates in Mississippi at 2050 Executive Drive, Pearl, MS 39208.

6.      This Court has jurisdiction over the subject matter of this Counterclaim pursuant to 28 U.S.C. § 1332 because Zavation, Johnson, and J2, on the one hand, and Precision and Spinal, on the other hand, are citizens of different states and the amount in controversy on their counterclaims exceeds $75,000, exclusive of interest and costs.  Additionally, this Court has supplemental jurisdiction over Zavation, Johnson and J2's counterclaim under 28 U.S.C. § 1367(a) as the claims below form part of the same case or controversy and derive from a common nucleus of operative fact.

*In Personam*

7.      This Court has *in personam* jurisdiction over Precision and Spinal, who have initiated this action.

## VENUE

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b) in this district as a substantial part of the events or omissions giving rise to Zavation and Johnson's claims occurred in this district.

## FACTS

9.      In 2005, Johnson was one of the original shareholders who created Spinal USA Holdings, Inc. for the purpose of manufacturing, distributing, and selling certain spinal medical devices and related products.   Johnson was the President, Secretary and Treasurer of the business.

10.      In 2006, Adam I. Lewis ("Lewis"), a neurosurgeon in Jackson, Mississippi, became a shareholder of Spinal USA Holdings, Inc.

11.      In 2006, Lewis also became a member of the board of directors of Spinal USA Holdings, Inc.

12.      Along with Lewis, in and around 2006, a number of other neurosurgeons joined Spinal USA Holdings, Inc., including Michael Molleston, M.D.

13.      At a later time, additional neurosurgeons from Alabama became shareholders of Spinal USA Holdings, Inc.

14.      On or around October 22, 2007, the shareholders of Spinal USA Holdings, Inc. created AL-MS Group, LLC ("AL-MS"), with each becoming a member of AL-MS.  AL-MS constructed a building that Spinal USA Holdings, Inc. ultimately rented from AL-MS.

15.     On or around November 12, 2008, Johnson was one of the original members who formed Precision Medical of Mississippi, LLC, a Mississippi limited liability company, which handled the manufacturing of some of Spinal USA Holdings, Inc.'s products.  At its creation, Lewis also became a member of Precision Medical of Mississippi, LLC.

16.     AL-MS ultimately constructed another building that it then rented to Precision Medical of Mississippi, LLC.

17.     On or around February 18, 2009, Johnson and the other shareholders of Spinal USA Holding, Inc. were part of forming Spinal USA LLC. With Spinal USA LLC having taken over all of its operations, soon thereafter, Johnson and the shareholders dissolved Spinal USA Holdings, Inc.

18.     Johnson continued on as President, Secretary and Treasurer of Spinal USA LLC.

19.     At its creation, Lewis and a number of other neurosurgeons became members of Spinal USA LLC.

20.     Then, in January 2010, Johnson was wrongfully terminated from Spinal USA LLC.

21.     Upon his termination, Johnson and Spinal USA LLC were immediately at odds, and both parties retained counsel.

22.     Spinal USA LLC hired James Pastena to be the president and/or managing-member of Spinal USA LLC and Precision Medical of Mississippi, LLC.

23.     Having previously been ousted from Spinal USA LLC, on or around June 1, 2010, Johnson publically registered a standard character mark for Zamedica with the United States Patent and Trademark Office under the goods and services description of "Bone screws; Goods of metal for medical use, namely screws, plates, pins and pivots; Medical screw connections;

disposable screws used in surgery procedures."  On or around July 8, 2010, Johnson publically registered the name and design for "Z Zamedica" with the United States Patent and Trademark Office under the same goods and services description.

24.     On or around July 30, 2010, Johnson formed Zamedica, LLC and publically registered the company with the Mississippi Secretary of State.  Johnson formed Zamedica, LLC for the purpose and intent to design and sell spinal products that did not compete with Spinal USA, LLC (in particular distraction pins or screws).

25.     Spinal USA, LLC, however, objected to his plans to sell distraction pins or screws.

26.     On January 12, 2011, Johnson entered into a Settlement Agreement with Spinal USA, LLC, AL-MS and Precision Medical of Mississippi, LLC (with an effective date of January 1, 2011).  The Settlement Agreement provided a one year covenant not "to engage or invest . . . in any business in competition with the Core Business of Spinal USA", with the restriction being limited to the United States, specifically stating "This one (1) year restriction covers the entire area of the United States of America."  As part of the Settlement Agreement, Johnson agreed that distraction pins and screws would be included within the scope of the one-year restriction against competition.

27.     Among other provisions, the Settlement Agreement provided in part:

    (15)   If litigation involving the enforcement of any provision of this Settlement Agreement takes place, the prevailing party shall be entitled to recover its reasonable attorney fees and costs.

*See* Settlement Agreement, para. 15.

28.     After entering into the Settlement Agreement, Johnson determined that he would pursue a surgical spinal implant company that would only make sales outside of the United States until after the one year covenant had expired (and that it would then pursue sales in the United States).    Around January 2011, Johnson publically changed the name from Zamedica LLC to Zavation LLC.

29.     Indeed the Amended Operating Agreement of Zavation LLC provides as follows:

1.5     **BUSINESS PURPOSE.** The purpose of the Company is to design, manufacture and sell surgical spinal implants and related products used by spine surgeons for the treatment of the illness or diseases of the spine.  The sale of such products shall be limited to areas outside of the United States of America until January 1, 2012.  After January 2, 2012 the business purpose of the company will be expanded to include the sale of such products in the United States. The company may also engage in any other lawful activity which is approved by a majority of the members.

30.     In January 2011, Spinal USA, LLC terminated Lawrence Walker ("Walker") for his refusal to sign a covenant not to compete agreement.  Subsequently, Zavation LLC hired Walker.

31.     Almost immediately, Spinal USA, LLC learned that Walker had gone to work for Zavation.

32.     On October 8, 2011, the Wall Street Journal published an article entitled "Taking Double Cut, Surgeons Implant Their Own Devices" focusing on the industry and in particular Adam Lewis's involvement and ownership interest in Spinal USA, LLC.  *See* Wall Street Journal Article, attached hereto as Ex. 1.

33.     The effect of this article on Spinal USA, LLC was profound according to one of the owners of the company, Dr. Michael Molleston.  In his bankruptcy case pleadings, the Debtor [Dr. Molleston] represented to this Court and his Ch. 11 Plan creditors that "distributions from Spinal USA have been reduced by over thirty (30%), due to pending investigations of

47

Spinal USA and adverse publicity in the Wall Street Journal," and that "the impact of the News Journal's attack has significantly reduced the company's sales and value."

34.     In full compliance with the provisions of the Settlement Agreement, in November and December 2011, Zavation obtained 510(k) FDA approval over three products, but Zavation did not make any sales in the United States in 2011.

35.     In 2012, Zavation began to compete in the spinal device market in the United States and made its first sale on January 25, 2012.

36.     Faced with the Wall Street Journal article, and increased scrutiny, Spinal USA, LLC, like many medical device companies, determined to get the neurosurgeons off of its board and out of the ownership of the business.  In furtherance of this plan, on March 29, 2012, Spinal USA, Inc. filed for and obtained a "Precision Spine" trademark.  Then, on June 19, 2012, Precision Spine, Inc. ("Precision") purchased the shares of Spinal USA, LLC and Precision Medical of Mississippi, LLC in a $72 million transaction.  *See* Press Release, attached hereto as Ex. 2.

37.     On information and belief, instead of receiving cash for their interests in Spinal USA, LLC and Precision Medical of Mississippi, LLC, the neurosurgeons retained promissory notes or some other form of financial ties to the purchaser, Precision, the net effect of which caused them to remain vested in the success of Precision's operations.

38.     By and through this transaction, on or around June 19, 2012, Spinal USA, LLC was merged into Spinal USA, Inc. ("Spinal") and Precision Medical of Mississippi, LLC was merged into Precision Medical, Inc.

39.     Annual reports filed with the Office of the Mississippi Secretary of State indicate that Precision did not acquire the ownership of the shares of AL-MS (that owns the buildings that

Precision's subsidiaries, *i.e.*, Spinal and Precision Medical, Inc. now rent).  Thus, the neurosurgeons who own AL-MS remain vested in the success of Precision via the continued receipt of rental payments for the use of its facilities.

40.     Precision from its inception on April 24, 2012 and Spinal from its inception on June 18, 2012 (and much earlier by their predecessor companies) have been well aware of Zavation's existence, its products and FDA approvals, and the fact that Zavation and Johnson were competing with it in the spinal device market.

41.     With James Pastena now in charge, his ideals, morals and standards permeated the culture of Precision and Spinal.  His résumé can be found in *Inter Med. Supplies Ltd. v. EBI Med. Systems, Inc.,* 975 F. Supp. 681, 684 (D.N.J. 1997) *aff'd and remanded*, 181 F.3d 446 (3rd Cir. 1999).  The Jury in that case "heard, and apparently credited, testimony that Pastena [President of EBI] claimed he would 'destroy Orthofix' [Pastena's competitor]."  *Id.* at 694.  It heard evidence, too, that Pastena lied to his sales force, "intend[ing] the sales force to repeat the 'lie' to doctors and hospitals served by EBI, after the Distributor Agreement ended, in an effort to isolate Orthofix and capture the U.S. market for external fixators for EBI." *Id.*[1]  It was evidence of this sort that caused the Jury to return a verdict against Pastena's company for "compensatory damages in the amount of $48,000,000.00, and $100,600,000.00 in punitive damages."  *Id.* at 681.  *See also id.* at 702 (remitting punitive award to $50,000,000).

42.     As Pastena's ideals, morals and standards filtered down to and through the workforce, one or more of Precision or Spinal's employees were instructed to engage in illegal activities, including misrepresenting another manufacturer's confidential instrument drawings as

---

[1] Mr. Pastena's company helpfully explained, in post-trial motions, "that Pastena lied to his sales force only in order to encourage them to remain at EBI, and to retain the competitive edge their services represented, but not to harm the plaintiffs."  *Inter Med. Supplies Ltd. v. EBI Med. Systems, Inc.,* 975 F. Supp. at 694.

Precision's own drawings.  Additionally, Precision and Spinal created a hostile and intolerable work environment.  These actions caused some employees of Precision and Spinal to seek employment elsewhere, including Zavation or J2.

43.     Several employees of Zavation or J2 were longtime friends and former employees of Precision and Spinal.  Not surprisingly, employees between the two companies, while competitors, would help each other out from time to time.   For example, when Precision and Spinal ran out of cutting fluid for their machines, one of their employees called Kyle Johnson of J2 to use a barrel of fluid to keep their operations from interruption. Of course, Kyle Johnson obliged, and Precision and Spinal later reimbursed J2 for the cost of the fluid.  On the flip side, Zavation has now learned that from time to time one or more employees or consultants of Zavation or J2 may have contacted their friends at Precision or Spinal to ask for information that was otherwise available from third party sources, but to save time, could be more quickly obtained by making a phone call to the friend at Precision or Spinal.

44.     Upon seeing evidences of these communications, just like Pastena did when he was President of EBI, Precision and Spinal, by and through Pastena, set a plan in motion to unfairly compete with and to destroy Zavation, Johnson and J2.

45.     In furtherance of this plan, despite the fact that none of the Defendants were subject to personal jurisdiction in New Jersey, on July 24, 2015, Precision, Spinal, and Precision Medical, Inc. filed suit against Zavation, Johnson and J2 in the Superior Court of New Jersey, Chancery Division: Morris County (the "New Jersey Lawsuit").  *See* New Jersey Complaint, attached hereto as Ex. 3.

46.     Precision and Spinal improperly filed suit in New Jersey to try to force Zavation, Johnson and J2 to litigate over 1100 miles away from home and to force Zavation, Johnson and J2 to spend tremendous sums of moneys on attorney's fees and other expenses.

47.     Of course in filing the New Jersey Complaint, Precision and Spinal triggered the attorneys' fee provision under paragraph 15 of the Settlement Agreement by suing Johnson for allegedly breaching certain provisions of that agreement.

48.     Wrongfully filing suit in New Jersey was just the beginning.

49.     Within a week of being served with the New Jersey Complaint, Zavation and Johnson received word from multiple sources that Lewis was going around to various hospitals or surgical facilities in or around Jackson, Mississippi, and stating that "Zavation got raided by the FBI" or that the "FBI is examining Zavation for having engaged in corporate espionage" or that "Zavation has been kicked out of St. Dominics" or other similar statements.

50.     These statements and/or similar statements by Lewis are false.

51.     Based on Lewis' actions, it is apparent that Precision and Spinal informed the members of AL-MS that they had taken action against Zavation, Johnson and J2 and then either encouraged, aided and abetted and/or conspired with AL-MS and Lewis, acting on Precision, Spinal and AL-MS's behalf and for himself, to unfairly compete with Zavation, Johnson and J2 by spreading false rumors against Zavation and Johnson.

52.     Lewis and AL-MS engaged in, and Precision and Spinal encouraged, aided and abetted and conspired with them in this unfair competition and the intentional making of false statements in order to injure and damage Zavation, Johnson and J2.

53.     Lewis and AL-MS acted as agents of Precision and Spinal, and therefore, Precision and Spinal are responsible for their actions.

54.     Lewis and AL-MS acting by and through or in conspiracy with Precision and Spinal have the financial motive to injure and damage Zavation, Johnson and J2 in order to increase Precision and Spinal's profits to ensure the payments of the amounts owed to Lewis and to ensure the continued flow of rents to AL-MS.

55.     On August 6, 2015, Zavation, Johnson and J2 filed their Opposition to Plaintiffs' Order to Show Cause Seeking Temporary Restraints and Expedited Discovery in Aid of a Preliminary Injunction. *See* 2:15cv05857-ES-JAD, docket no. 17.  In the Opposition, Zavation, Johnson and J2 explained that some or all of them were unaware of some of the events set forth in the Complaint, that certain agreements had not been breached, that the information requested from John Wilson by Frankie Cummins or Kyle Johnson was innocuous and could have been obtained by other third party sources.

56.     Ignoring Zavation, Johnson and J2's explanations, with Lewis and AL-MS engaged and in action, Precision and Spinal decided to implement the next phase of their plan. Accordingly, on September 8, 2015, Timothy Bortree, General Counsel for Precision and Spinal, distributed a letter to all of Precision's distribution and supplier network. *See* Letter, attached hereto as Ex. 4.

57.     Many of these distributors and suppliers are independent and thus also either have contracts with Zavation or J2 or were potential distributors or suppliers for Zavation or J2.

58.     The letter was a classic defamation and defamation by implication.

59.     The letter was an out of court statement by Precision and Spinal by and through their agent Bortree that Zavation, Johnson and J2 had sought, obtained and utilized the trade secrets and other confidential and proprietary business information and documents of Precision and Spinal to unfairly compete and, in so doing, tortiously interfered with certain of their

contractual relationships.  In furtherance of the defamation, Bortree for and on behalf of Precision and Spinal, continued in characterizing the actions of Zavation, Johnson and J2 by stating that "[g]iven the extent of the activities" they then deemed it "critical to pursue legal action".  Moreover, the letter falsely stated that one of the "critical" purposes of this litigation is to protect the interests of the recipients of the letter.

60.     The purpose and focus of these out of court statements was to inflict harm and damage on Zavation, Johnson and J2 and to cause distributors and suppliers to no longer use Zavation, Johnson or J2 or to not consider using them in the future.

61.     While having accomplished their goal of making Zavation, Johnson and J2 spend a huge amount on attorneys' fees and expenses, on September 14, 2015, the Superior Court of New Jersey: Chancery Division: Morris County granted the Defendants' Motion to Dismiss the Complaint for lack of personal jurisdiction.  *See* Order, attached hereto as Ex. 5.

62.     Since Johnson prevailed against Precision and Spinal, however, he is now entitled to all of his attorneys' fees and costs against Precision and Spinal under the Settlement Agreement.

63.     Refusing to let go of their plan, Precision and Spinal have now filed a frivolous appeal to the New Jersey Appellate Courts, while at the same time filing and pursuing the Complaint in this Action in Mississippi (the "Mississippi Complaint").

64.     In the Mississippi Complaint, Precision and Spinal have continued to pursue their frivolous claims against Johnson under the Settlement Agreement (not to mention the other defendants) despite the fact that they know all of their putative claims are barred under Mississippi's statute of limitations.

53

## COUNT I – BREACH OF THE SETTLEMENT AGREEMENT

### (By Johnson against Precision and Spinal)

65.     Johnson incorporates by reference the preceding allegations of the Counterclaim.

66.     Pursuant to the Settlement Agreement, Johnson, Spinal USA, LLC, AL-MS and Precision Medical of Mississippi, LLC agreed that "[i]f litigation involving enforcement of any provision of this Settlement Agreement takes place, the prevailing party shall be entitled to recover its reasonable attorney fees and costs."

67.     Precision and Spinal improperly filed the New Jersey Lawsuit against Johnson under the Settlement Agreement.

68.     Johnson prevailed in the litigation with the State Court judge dismissing the lawsuit for want of personal jurisdiction and with prejudice over the personal jurisdiction issue.

69.     Precision and Spinal have pursued a baseless appeal of the New Jersey State Court order to which Johnson seeks all of his continuing attorney fees and costs under Paragraph 15 of the Settlement Agreement

70.     Just like they did in New Jersey, Precision and Spinal have filed claims against Johnson under the Settlement Agreement in this action, despite the fact that these putative claims are clearly time barred under Mississippi's general three year statutes of limitations.

71.     As damages, Johnson seeks all of his attorneys' fees and expenses in defending the New Jersey litigation, the New Jersey appeal, and defending this Mississippi Action under the provisions of the Settlement Agreement.  Johnson also seeks all pre-judgment interest, post-judgment interest and all costs of court from Precision and Spinal.

## COUNT II – MALICIOUS PROSECUTION

### (By Zavation, Johnson and J2 against Precision and Spinal)

72.     Zavation, Johnson and J2 incorporate by reference the preceding allegations of the Counterclaim.

73.     On July 24, 2015, Precision, Spinal and Precision Medical, Inc. (which has assigned all of its rights and obligations to Precision) filed a civil suit against Zavation, Johnson and J2 in New Jersey state court.

74.     James Pastena, the President and CEO of Precision and Spinal, has a history of using civil litigation to attempt to run his competitors out of business.

75.     Precision and Spinal filed the New Jersey Lawsuit with malice, specifically with the intent to harm Zavation, Johnson and J2 by making them run up huge amounts of attorneys' fees and expenses in seeking the dismissal of the New Jersey Complaint.

76.     Indeed, there was no legitimate justification or reasonable grounds for belief that the New Jersey court system had personal jurisdiction over Zavation, Johnson or J2.

77.     Consistently, on September 14, 2015, the Superior Court of New Jersey: Chancery Division: Morris County granted the Defendants' Motion to Dismiss the Complaint for lack of personal jurisdiction.

78.     Precision and Spinal seek to further compound the damages suffered by Zavation, Johnson and J2 by filing a meritless appeal of the Order dismissing the New Jersey litigation for want of personal jurisdiction.

79.     Precision and Spinal have filed a meritless appeal for its continued purpose of trying to run Zavation, Johnson and J2 out of business.

80.     As damages, Zavation, Johnson and J2 seek all of their attorneys' fees and expenses in defending the New Jersey litigation and the appeal, which damages are continuing. Zavation, Johnson and J2 also seek punitive damages and their attorneys' fees in prosecuting this claim as well as all pre-judgment interest, post-judgment interest and all costs of court.

## COUNT III – ABUSE OF PROCESS

### (By Zavation, Johnson and J2 against Precision and Spinal)

81.     Zavation, Johnson and J2 incorporate by reference the preceding allegations of the Counterclaim.

82.     On July 24, 2015, Precision, Spinal and Precision Medical, Inc. filed a civil suit against Zavation, Johnson and J2 in New Jersey state court.

83.     Precision and Spinal had summonses issued in the New Jersey Lawsuit and had them served on Zavation, Johnson and J2.

84.     James Pastena, the President and CEO of Precision and Spinal, has a history of using civil litigation to attempt to run his competitors out of business.

85.     Precision and Spinal filed the New Jersey Lawsuit and served the summonses on Zavation, Johnson and J2 for the purpose and intent of causing damages to Zavation, Johnson and J2, in particular in making them run up huge amounts of attorneys' fees and expenses in seeking the dismissal of the New Jersey Complaint.

86.     Indeed, the filing of the New Jersey Complaint and the issuance and service of the summonses on Zavation, Johnson and J2 were done for the unlawful purpose of causing damage and loss to Zavation, Johnson and J2.  Precision and Spinal's filing of the New Jersey Complaint and the issuance and service of the summonses was done with malice as Precision and Spinal

took these actions without right or justifiable cause as the New Jersey court system did not have personal jurisdiction over Zavation, Johnson or J2.

87.     Tellingly, on September 14, 2015, the Superior Court of New Jersey: Chancery Division: Morris County granted the Defendants' Motion to Dismiss the Complaint for lack of personal jurisdiction.

88.     In furtherance of their scheme, Precision and Spinal seek to further compound the damages suffered by Zavation, Johnson and J2 by filing a meritless appeal of the Order dismissing the New Jersey litigation for want of personal jurisdiction.

89.     Precision and Spinal have filed a meritless appeal for its continued purpose of trying to run Zavation, Johnson and J2 out of business.

90.     Moreover, in filing the instant action, Precision and Spinal have intentionally invoked the legal processes of this Court for an improper purpose with an ulterior motive that is not compatible with the lawful function of the processes of this Court.  Specifically, Precision and Spinal are using this Court's process to attempt to prevent Zavation, Johnson and J2 from engaging in a legitimate business undertaking simply because the business is in competition with Precision and Spinal.  In an effort to maximize the harm to Zavation, Johnson and J2 from the mere pendency of this action, Precision and Spinal (directly and indirectly through their affiliates) have wrongfully misused the process of this Court by publishing the pendency of this action as well as the unfounded claims in their Complaint to the suppliers, distributors and end users upon whom Zavation, Johnson and J2 rely for their business.  Precision and Spinal's misconduct has been calculated to cause damage to Zavation, Johnson and J2 and has indeed caused such damage.

91.     As damages, Zavation, Johnson and J2 seek (a) all of their attorneys' fees and expenses in defending the New Jersey litigation and the appeal, which damages are continuing, (b) lost profits and (c) all of their attorneys' fees and expenses in defending this action and any appeal of this action.  Zavation, Johnson and J2 also seek punitive damages and their attorneys' fees from their abuse of civil process in the New Jersey Litigation as well as all pre-judgment interest, post-judgment interest and all costs of court.

### COUNT IV – DEFAMATION and/or in the alternative FALSE LIGHT

### (By Zavation, Johnson and J2 against Precision and Spinal)

92.     Zavation, Johnson and J2 incorporate by reference the preceding allegations of the Counterclaim.

93.      As set forth above, within a week of being served with the New Jersey Complaint, Zavation and Johnson received word from multiple sources that Adam Lewis was going around to various hospitals or surgical facilities in or around Jackson, Mississippi and stating that "Zavation got raided by the FBI" or that the "FBI is examining Zavation for having engaged in corporate espionage" or that "Zavation has been kicked out of St. Dominics" or other similar statements.

94.     These statements and/or similar statements by Lewis to third parties are false and defamatory.

95.     Based on Lewis' actions, it is apparent that Precision and Spinal informed the members of AL-MS that they had taken action against Zavation and Johnson, and then Precision and Spinal encouraged, aided and abetted and/or conspired with AL-MS and Lewis AL-MS to unfairly compete with Zavation, Johnson and J2 by spreading false rumors against Zavation and Johnson.

96.     In the alternative, at all time, Lewis and AL-MS acted as agents of Precision and Spinal.

97.     The statements by Lewis and AL-MS, for and on behalf of and in furtherance of the desires of Precision and Spinal, were designed to injure and indeed did injure or diminish the reputation, esteem, respect and goodwill in which Zavation, Johnson and J2.

98.     Indeed, Lewis and AL-MS had the financial motive to injure and damage Zavation, Johnson and J2 in order to increase Precision and Spinal's profits to ensure the payments of the promissory notes to Lewis and the other neurosurgeons and to ensure the flow of rents and above market rents to AL-MS.

99.     Lewis and AL-MS knew or should have known that these statements were defamatory to Zavation, J2 and Johnson when published.

100.    These statements by Lewis and AL-MS are unprivileged and unjustified.

101.    These statements were made by Lewis and AL-MS for the improper purpose of eliminating Zavation, Johnson and J2 as competitors.

102.    At all times, Precision and Spinal aided and abetted and/or conspired with Lewis and AL-MS to commit these actions.  In the alternative, Lewis and AL-MS acted as agents for Precision and Spinal in committing these actions and Precision and Spinal are liable for their actoins.

103.    The defamation by Lewis, AL-MS, Precision and Spinal above has resulted in damages to Zavation, Johnson and J2.  In the alternative, Lewis, AL-MS, Precision and Spinal's placing of Zavation, Johnson and J2 in a false light has resulted in damages to Zavation, Johnson and J2.  The actions by Lewis, AL-MS, Precision and Spinal above has resulted in damages to Zavation, Johnson and J2.  In addition to their lost profits and other compensatory damages,

Zavation, Johnson and J2 seek punitive damages and their attorneys' fees as well as all pre-judgment interest, post-judgment interest and all costs of court.

## COUNT V – DEFAMATION and/or DEFAMATION BY IMPLICATION

### (By Zavation, Johnson and J2 against Precision and Spinal)

104.    Zavation, Johnson and J2 incorporate by reference the preceding allegations of the Counterclaim.

105.    On August 6, 2015, Zavation, Johnson and J2 filed their Opposition to Plaintiffs' Order to Show Cause Seeking Temporary Restraints and Expedited Discovery in Aid of a Preliminary Injunction.  *See* 2:15cv05857-ES-JAD, docket no. 17.  In the Opposition, Zavation, Johnson and J2 explained that some or all of them were unaware of some of the events set forth in the Complaint, that certain agreements had not been breached, that the information requested from John Wilson by Frankie Cummins or Kyle Johnson was innocuous and could have been obtained from other third party sources.

106.    Despite Precision and Spinal's receipt of the fact that Zavation, Johnson and J2 objected to and opposed their allegations and despite the fact that they have provided reasonable explanations for most if not all of the allegations of the Complaint, in furtherance of Precision and its subsidiaries' scheme to unfairly compete with Zavation, Johnson and J2, on September 8, 2015, Timothy Bortree ("Bortree"), as General Counsel for Precision and Spinal, sent out a letter to all of Precision's distribution and supplier network.  A true and correct copy of the letter is attached as Ex. 4.

107.    The letter was distributed to third parties in Mississippi and to other locations in the United States with the intent to inflict injury and damage on Zavation, Johnson and J2 in Mississippi.

108.    At all times, Bortree acted as an agent for and on behalf of Precision and Spinal. In the alternative, Precision and Spinal aided and abetted Bortree and/or conspired with Bortree to commit these actions.

109.    The letter was a classic defamation and defamation by implication.

110.    The letter was an out of court statement by Precision and Spinal that Zavation, Johnson and J2 had sought, obtained and utilized the trade secrets and other confidential and proprietary business information and documents of Precision and Spinal  to unfairly compete and, in so doing, tortiously interfered with certain of their contractual relationships.  In furtherance of the defamation, Bortree continued in characterizing the actions of Zavation, Johnson and J2 by stating that "[g]iven the extent of the activities" they then deemed it "critical to pursue legal action".  Morover, the letter falsely stated that one of the "critical" purposes of this litigation is to protect the interests of the recipients of the letter.

111.    Even worse, these statements were made at a time when Precision and Spinal knew that the filing in New Jersey was improper and that that some or all of the alleged "contractual relationships" with their former employees were unenforceable based on Precision and Spinal's insistence of one or more former employees to engage in illegal activities or based on their creation of a hostile or intolerable work environment and conditions.

112.    The purpose and focus of these out of court statements was to inflict harm and damage on Zavation, Johnson and J2 and to cause distributors and suppliers to no longer use Zavation, Johnson or J2 or to not consider using them in the future.

113.    Precision and Spinal, by and through Bortree, knew or should have known that the statements were defamatory when they published Bortree's letter.

114.    Precision and Spinal's publication of such statements was unprivileged and unjustified.

115.    The defamation by Precision and Spinal above has resulted in damages to Zavation, Johnson and J2.  In addition to their lost profits and other compensatory damages, Zavation, Johnson and J2 seek punitive damages and their attorneys' fees as well as all pre-judgment interest, post-judgment interest and all costs of court.

## COUNT VI – FALSE LIGHT

### (By Zavation, Johnson and J2 against Precision and Spinal)

116.    Zavation, Johnson and J2 incorporate by reference the preceding allegations of the Counterclaim.

117.    On August 6, 2015, Zavation, Johnson and J2 filed their Opposition to Plaintiffs' Order to Show Cause Seeking Temporary Restraints and Expedited Discovery in Aid of a Preliminary Injunction.  *See* 2:15cv05857-ES-JAD, docket no. 17.  In the Opposition, Zavation, Johnson and J2 explained that some or all of them were unaware of some of the events set forth in the Complaint, that certain agreements had not been breached, that the information requested from John Wilson by Frankie Cummins or Kyle Johnson was innocuous and could have been obtained by other third party sources.

118.    In furtherance of Precision and its subsidiaries' scheme to unfairly compete with Zavation, Johnson and J2, on September 8, 2015, Bortree, as General Counsel for Precision and Spinal, sent out a letter to all of Precision's distribution and supplier network.  *See* Ex. 4.

119.    The letter was distributed to third parties in Mississippi and to other locations in the United States with the intent to inflict injury and damage on Zavation, Johnson and J2 in Mississippi.

120.     Some or all of the statements in the letter were not true.

121.     The letter was an out of court statement by Precision and Spinal, by and through Bortree, that Zavation, Johnson and J2 had sought, obtained and utilized the trade secrets and other confidential and proprietary business information and documents of Precision and Spinal to unfairly compete and, in so doing, tortiously interfered with certain of their contractual relationships.  In furtherance of their trying to cast Zavation, Johnson and J2 into a false light, Precision and Spinal by and through Bortree continued in characterizing the actions of Zavation, Johnson and J2 by stating that "[g]iven the extent of the activities" they then deemed it "critical to pursue legal action".  Morover, the letter falsely stated that one of the "critical" purposes of this litigation is to protect the interests of the recipients of the letter.

122.     Some or all of the statements in the letter were designed to leave the recipients of the letter with the distinct impression that Zavation, Johnson and J2 had stolen Precision and Spinal's trade secrets, confidential information and proprietary business information, had been unfairly competing with Precision and Spinal and had tortiously interfered with their contractual relationships.   Moreover, the letter was designed to make the recipients believe that Zavation, Johnson and J2 have engaged in acts detrimental to the recipients.

123.     At all times, Bortree acted as an agent for and on behalf of Precision and Spinal. In the alternative, Precision and Spinal aided and abetted Bortree and/or conspired with Bortree to commit these actions.

124.     The letter placed Zavation, Johnson and J2 in a false light that was highly offensive to them and would be highly offensive to a reasonable person.

125.     Even worse, these statements were made at a time when Precision and Spinal knew that the filing in New Jersey was improper and that that some or all of the "contractual

relationships" with their former employees were unenforceable based on Precision and Spinal's insistence of one or more former employees to engage in illegal activities or based on their creation of a hostile or intolerable work environment.

126.    Precision and Spinal knew that some or all the statements in the September 8, 2015 letter were false or they acted in reckless disregard to their falsity and the false light in which it would place Zavation, Johnson and J2.

127.    Precision and Spinal actions above have placed Zavation, Johnson and J2 into a false light and have resulted in damages to Zavation, Johnson and J2.  In addition to their lost profits and other compensatory damages, Zavation, Johnson and J2 seek punitive damages and their attorneys' fees as well as all pre-judgment interest, post-judgment interest and all costs of court.

### COUNT VII – UNFAIR COMPETITION (Common law)

### (By Zavation, Johnson and J2 against Precision and Spinal)

128.    Zavation, Johnson and J2 incorporate by reference the preceding allegations of the Counterclaim.

129.    The actions by Precision and Spinal in improperly filing a suit in New Jersey and pursuing a meritless appeal to try to drive Zavation, Johnson and J2 out of business, the actions by Lewis and AL-MS for the benefit and in conjunction, as agents for or in conspiracy with Precision and Spinal and the actions of Bortree, Precision and Spinal as set forth above are contrary to the honest and usual practice and custom in the spinal medical device -- or any other – industry.

130.     At all times, Bortree, Lewis and/or AL-MS acted as an agent for and on behalf of Precision and Spinal.  In the alternative, Precision and Spinal aided and abetted Bortree, Lewis and AL-MS and/or conspired with Bortree, Lewis and AL-MS to commit these actions.

131.     In undertaking these actions, Precision, Spinal, Lewis, Al-MS, and Bortree have acted intentionally and maliciously and for the purpose of harming Zavation, Johnson and J2's economic interests.

132.     Precision, Spinal, Lewis, Al-MS, and Bortree have deployed these tactics in order to force Zavation, Johnson and J2 to incur huge amounts of attorneys' fees, expenses and costs in order to try to run Zavation, Johnson and J2 out of business.

133.     Precision, Spinal, Lewis, Al-MS, and Bortree's actions constitute unfair competition and have caused Zavation, Johnson and J2 to incur significant losses and/or to incur significant fees and expenses.  In addition to their lost profits and other compensatory damages, Zavation, Johnson and J2 seek punitive damages and their attorneys' fees as well as all pre-judgment interest, post-judgment interest and all costs of court.

### COUNT VIII – TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS, WITH BUSINESS RELATIONSHIPS AND PROSPECTIVE BUSINESS ADVANTAGE)

### (By Zavation against Precision and Spinal)

134.     Zavation incorporates by reference the preceding allegations of the Counterclaim.

135.     By and through Bortree's September 8, 2015 letter, Precision and Spinal have tortiously interfered with Zavation's existing contractual relations with its current distributorship and supplier network.

136.     Precision and Spinal know that Zavation and Precision in many instances use the same distributors and suppliers.

137.     Despite knowing that many if not all of the allegations of their New Jersey lawsuit were being contested by Zavation, Johnson and J2, Precision and Spinal, by and through Bortree, sought to interfere with Zavation, Johnson and J2's existing contractual relations with those joint distributors and suppliers by publishing the September 8, 2015 letter.   Precision and Spinal likewise sought to tortiously interfere with Zavation's prospective business advantage with the other suppliers or distributors to whom the letter was sent.

138.     Precision and Spinal's interference has caused Zavation damages. In addition to lost profits and other compensatory damages, Zavation seeks punitive damages and their attorneys' fees as well as all pre-judgment interest, post-judgment interest and all costs of court.

### COUNT IX – TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS, WITH BUSINESS RELATIONSHIPS AND PROSPECTIVE BUSINESS ADVANTAGE)

### (By Zavation and J2 against Precision and Spinal)

139.     Zavation and J2 incorporate by reference the preceding allegations of the Counterclaim.

140.     Precision and Spinal have filed tortious interference claims against Zavation, Johnson and J2 regarding certain covenant not to compete agreements or confidentiality agreements operating as covenants not to compete between Spinal, on one hand, and Milton Phillips, Frankie Cummins, Kyle Johnson, Scott Smith, Ryan Ratcliff, Mike Carroll, Jerry Page, Lawrence Walker, on the other.

141.     Precision and Spinal knew or should have known that some or all of these agreements were not enforceable based on their requests for the employees to engage in illegal activities and/or for their creation of a hostile or intolerable work environment.

66

142.     Precision and Spinal's improper claims against Zavation, Johnson and J2 have tortiously interfered with Zavation and J2's contractual relationships with Milton Phillips, Frankie Cummins, Kyle Johnson, Scott Smith, Ryan Ratcliff, Mike Carroll, Jerry Page, and Lawrence Walker.

143.     Precision and Spinal's interference has caused Zavation and J2 damages. In addition to their lost profits and other compensatory damages, Zavation and J2 seek punitive damages and their attorneys' fees as well as all pre-judgment interest, post-judgment interest and all costs of court.

### COUNT X – CONSPIRACY, AIDING AND ABETTING AND AGENCY LIABILITY
### (By Zavation, Johnson and J2 against Precision and Spinal)

144.     Zavation, Johnson and J2 incorporate by reference the preceding allegations of the Counterclaim.

145.     At all times, Precision and Spinal acted in conspiracy with Lewis, Bortree and/or AL-MS based on the actions and inactions set forth above.

146.     At all times, in the alternative, Precision and Spinal aided and abetted the actions and inactions of Lewis, Bortree and/or AL-MS above.

147.     At all times, in the alternative, Lewis, Bortree and/or AL-MS acted as agents of Precision and Spinal in the actions and inaction above.

148.     Precision and Spinal at all times acknowledged, encouraged, aided and abetted, and conspired with Lewis, Bortree and/or AL-MS to inflict harm and damage on Zavation, Johnson and J2.

149.     Precision and Spinal actions and inactions have caused Zavation, Johnson and J2 to incur significant losses and/or to incur significant fees and expenses.  In addition to their lost

profits and other compensatory damages, Zavation, Johnson and J2 seek punitive damages and their attorneys' fees as well as all pre-judgment interest, post-judgment interest and all costs of court.

WHEREFORE, PREMISES CONSIDERED, Zavation, Johnson and J2, jointly and severally as the Court finds appropriate, request that the Court enter judgment against Precision and Spinal jointly and severally as the Court finds appropriate, as follows:

(a) Such damages, including lost profits and other compensatory damages, that Zavation, Johnson and J2 may prove at trial were caused by Precision and Spinal, respectively;

(b) Exemplary and/or punitive damages in an amount as necessary to deter Precision and Spinal from again engaging in such willful and egregious improper conduct;

(c) Attorneys' fees incurred in the New Jersey action and appeal;

(d) Attorneys' fees incurred in this action;

(e) Pre-judgment interest;

(f) Post-judgment interest; and

(g) All costs of court and any such other legal or equitable relief that the Court deems just and proper.

**JURY TRIAL DEMANDED**

Zavation, Johnson and J2 demand a jury trial of all issues so triable in this Action.

Respectfully submitted, this the 28th of March, 2016.

Respectfully submitted,

ZAVATION, LLC, J2 MANUFACTURING LLC,
and JEFFREY JOHNSON

By:   */s/  Jack Crawford_____*
      Paul N. Davis (MSB #8638)
      Robert M. Frey (MSB #5531)
      John A. Crawford, Jr. (MSB #10346)
      Haley F. Gregory (MSB #104532)
      BUTLER SNOW LLP
      1020 Highland Colony Parkway, Suite 1400
      Post Office Box 6010
      Ridgeland, Mississippi 39158-6010
      (P)(601) 948-5711
      (F)(601) 985-4500
      (E) bob.frey@butlersnow.com
      (E) jack.crawford@butlersnow.com
      (E) haley.gregory@butlersnow.com

## CERTIFICATE OF SERVICE

I, John A. Crawford, Jr., do further certify that I have this day caused a true and correct copy of the foregoing instrument to be filed through the Court's ECF system, which has sent notice to all counsel of record.

This the 28th day of March, 2016.

*/s/  Jack Crawford_____*

30506961v1

69