Carmen J. DiMaria, Esq. (I.D. #031751994)
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Telephone: (973) 656-1600
Facsimile: (973) 656-1611
*Attorneys for Defendants*

F I L E D

SEP 1 4 2015

~~HON. C. RANSBURY~~
~~PRESIDING JUDGE~~
~~CHANCERY DIVISION~~

---------------------------------------------------------

PRECISION SPINE, INC., SPINAL USA,
INC. f/k/a Spinal USA, LLC, and
PRECISION MEDICAL, INC. f/k/a
Precision Medical of Mississippi, LLC,

                          Plaintiffs,

v.

ZAVATION, LLC, J2
MANUFACTURING, LLC and
JEFFREY JOHNSON,

                          Defendants.

---------------------------------------------------------

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

SUPERIOR COURT OF NEW JERSEY:
CHANCERY DIVISION: MORRIS COUNTY

DOCKET NO.: MRS-C-000101-15


**ORDER GRANTING DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT**

This matter having been opened to the Court by Defendants Zavation, LLC, J2
Manufacturing, LLC, and Jeffrey Johnson (collectively, "Defendants") by way of their Motion to
Dismiss the Complaint Pursuant to Rule 4:6-2(b), on notice to Plaintiffs, Precision Spine, Inc.,
Spinal USA, Inc., and Precision Medical, Inc., and the Court having considered the submissions
and arguments of the parties, and for good cause having been shown;

**IT IS** on this _14_ day of _September_, 2015,

**ORDERED** that Defendants' Motion to Dismiss the Complaint be and hereby is granted;
and it is further

**ORDERED** that Plaintiffs' Complaint is dismissed in its entirety with prejudice; and it is
further

claim. ① as to jurisdiction, nar merits on the

**EXHIBIT 5**

ORDERED that counsel for Defendants shall serve a signed copy of this Order on all counsel within seven (7) days after receiving a signed copy from the Court.

*See attached*
*Statement of reason*

Opposed _____

Unopposed _____

STEPHAN C. H_____
SUPERIOR COURT OF N_____
J.S.C.

22100464.1

IT IS YOUR RESPONSIBILITY
TO SERVE YOUR ADVERSARY
WITH THIS DOCUMENT

## PRECISION SPINE, INC., et al. v. ZAVATON, LLC, et als.
## DOCKET NO. MRS-C-101-15

## STATEMENT OF REASONS

Defendants, Zavation, LLC ("Zavation"), J2 Manufacturing, LLC, ("J2 Manufacturing"), and Jeffrey Johnson, move to dismiss the Complaint for lack of personal jurisdiction pursuant to R. 4:6-2(b).

This is a case involving claims of tortious interference, breach of contract, unfair competition, and other business torts. Plaintiff, Precision Spine, Inc. ("Precision Spine") is a corporation with its headquarters in Parsippany, New Jersey and manufacturing facilities in Mississippi. Precision Spine has two Mississippi-based subsidiary companies, Spinal USA, Inc. ("Spinal USA") and Precision Medical, Inc. ("Precision Medical"). Precision Spine did not acquire Spinal USA and Precision Medical until June 2012.

In 2005, Defendant Jeffrey Johnson participated in creating Spinal USA Holdings, Inc., which was a Mississippi Corporation with a Mississippi principal place of business. Jeffrey Johnson Cert. ("Johnson I Cert.") ¶ 32. Jeffrey Johnson served in several corporate officer positions for Spinal USA Holdings, Inc. Id. In November 2008, Jeffrey Johnson also played a part in forming Plaintiff Precision Medical, which was a Mississippi limited liability company that handled some manufacturing for Spinal USA Holdings, Inc. Id. Several months later in February 2009, Jeffrey Johnson participated in the formation of Plaintiff Spinal USA, which took over all operations for Spinal USA Holdings, Inc. Id. Jeffrey Johnson signed a non-compete clause within the context of his employment for Plaintiff, which was restricted in scope to the United States. Id. ¶ 33.

Defendant Jeffrey Johnson was terminated from Plaintiff Spinal USA in January 2010. Id ¶32. Spinal USA then hired James Pastena to be the President of Spinal USA and Precision Medical. Id. Also in 2010, Spinal USA shifted the engineering and product development process from Mississippi to New Jersey. Fahey Cert. ¶ 5. Due to Precision Spine's purchase of Spinal USA and Precision Medical in 2012, Plaintiffs are largely based out of New Jersey as Precision Spine is headquartered in Parsippany. Currently, Spinal USA employs 14 engineers in New Jersey and 2 engineers in Mississippi. Id. The product designs and other trade secrets were shared on a confidential basis with Spinal USA employees in both New Jersey and Mississippi. Id. ¶ 11. Moreover, since 2010, all of Spinal USA's senior executives resided in New Jersey. Id. ¶ 6. James Pastena is currently the Chief Executive Officer of Plaintiff Precision Spine, the parent company to Spinal USA and Precision Medical.

1

After his termination, Jeffrey Johnson formed Zamedica, LLC to design and sell spinal products. Johnson I Cert. ¶ 33. Due to a non-compete clause from Jeffrey Johnson's employment contract with Plaintiff, Spinal USA objected to this action. Id. As a result, Zamedica, LLC sold spinal products outside of the United States. Id. In January 2011, Jeffrey Johnson publically changed Zamedia, LLC's name to Zavation, LLC. Id. Zavation's Amending Operating Agreement provided that after January 2, 2012, Zavation would begin selling products in the United States. Id ¶ 34.

On behalf of Spinal USA, James Pastena negotiated a Settlement Agreement with Defendant Jeffrey Johnson in 2010 and 2011 following Johnson's termination. Id. ¶ 3. James Pastena was physically located in New Jersey when he engaged in these negotiations. Id. ¶ 4. Both parties used Mississippi attorneys to represent them.  The Settlement Agreement provided for payments to be made to Jeffrey Johnson by management located in New Jersey. Id. ¶ 8. Indeed, the last payment made to Jeffrey Johnson under the Settlement Agreement was issued from New Jersey. Id. According to Plaintiffs, Jeffrey Johnson knew James Patena was in New Jersey during negotiations and also failed to disclose to Spinal USA that he formed Zamedica, LLC (which later became known as Zavation). Id. ¶¶ 5-6. Plaintiffs assert that they never would have entered into the Settlement Agreement with Jeffrey Johnson if they knew about Zavation's formation. Id. ¶ 6.

Furthermore, since Jeffrey Johnson's termination from Spinal USA, several Spinal USA employees began working for Defendants Zavation and J2 Manufacturing instead. Fahey Cert. ¶¶ 11-12. Indeed, in the past two years ten of Plaintiffs' employees resigned to join Zavation and/or J2 Manufacturing. Pastena Cert. ¶¶ 5, 19, 33. According to Plaintiffs, Defendants Zavation and J2 Manufacturing also induced Plaintiffs' employees into providing confidential information. For example, J2 Manufacturing received product blueprints from Plaintiffs' employee James Cochran. Fahey Cert. ¶¶ 8-12; Moses Cert. ¶ 6; Albert Cert. ¶ 6. In addition, Zavation employee, John Cummins, contacted Plaintiffs' employee, John Wilson, in July 2014 and allegedly induced Wilson to reveal confidential information. Wilson Aff. ¶ 9; Moses Cert. ¶ 4. All of the employees were and continue to be employed in Mississippi.

Defendant Jeffrey Johnson is currently a Mississippi resident and also the President of Co-Defendant Zavation. Johnson I Cert. ¶¶ 2-3. Zavation is a limited liability company with its principal place of business in Mississippi. Id. ¶ 4. Zavation designs and distributes medical device spinal implants. Id. ¶ 33. Five out of the six members of Zavation personally reside in Mississippi. Id. ¶ 2. The sixth member of Zavation is an irrevocable trust with a trustee who resides in Georgia and a beneficiary, which is a non-profit organization,

2

with a principle place of business in Georgia. Id. Although Zavation does not manufacture any of its products in New Jersey, it maintains a contractual relationship with a New Jersey company to assist Zavation with developing a bone replacement product. Id. ¶ 12. Defendants assert that this bone replacement product does not relate to Plaintiffs' suit. Id; Pastena Cert. ¶ 28. However, Plaintiffs question whether this product was based upon misappropriated trade secrets taken by Defendants. See Plaintiffs' Opposition Brief, 22.

Additionally, Defendant J2 Manufacturing is a limited liability company with its principal place of business in Mississippi. Kyle Johnson Cert. ("Johnson II Cert.") ¶ 4. Kyle Johnson, a Mississippi resident, is the exclusive member of J2 Manufacturing. Id. J2 Manufacturing is a contract manufacturer of surgical instruments and implants. Id.

This Court grants Defendants' motion to dismiss the Complaint for lack of personal jurisdiction.

Pursuant to R. 4:6-2(b), a court may dismiss a claim for lack of jurisdiction over the person. Plaintiffs bear the burden of demonstrating that the Court has personal jurisdiction over each defendant. Jacobs v. Walt Disney World, Co., 309 N.J. Super. 443, 454 (App. Div. 1998). To meet this burden, Plaintiffs must proffer actual proofs and not merely rely upon bare pleadings. Time Share Vacation Club v. Atlantic Resorts Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).

The extent to which New Jersey courts may exercise personal jurisdiction over out-of-state parties is limited by the Due Process Clause of the Fourteenth Amendment of the United State Constitution. See Mische v. Bracey's Supermarket, 420 N.J. Super. 487, 491 (App. Div. 2011). Due process requires that a defendant have minimum contacts with the forum state, and that an exercise of jurisdiction over the defendant comports with "traditional notions of fair play and substantial justice." Int'l Shoe Co., v. Washington, 326 U.S. 310, 316 (1945). Minimum contacts are established by "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws.'" Asahi Metal Indus. Co. v. Sup. Ct. of Cal., 480 U.S. 102, 109 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 324 (3d Cir. 2007) (quoting Burger King Corp., 471 U.S. at 477); see also Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 207 (3d Cir. 1998) (discussing

3

how it is "rare" for courts to find jurisdiction inappropriate when minimum contacts exist).

"There are two types of personal jurisdiction over a nonresident defendant: specific and general." Jacobs, 309 N.J. Super. at 452. The existence of a contractual relationship alone is insufficient to establish that a court may exercise specific or general jurisdiction over a non-resident. Bayway Refining Co. v. State Utilities, Inc. 333 N.J. Super. 420, 431-32 (App. Div. 2000). In this case, Defendants argue that the Court cannot exercise either specific jurisdiction or general jurisdiction. Both[1] of the Defendants' arguments will be discussed in turn:

## I.  General Jurisdiction

A New Jersey court may obtain general personal jurisdiction over a non-resident who engages in "minimum contacts" which are defined as such substantial and continuous contacts with New Jersey "to justify subjecting the defendant to the forum's jurisdiction" for any cause of action. Mische, 420 N.J. Super. at 491-492. "This standard for establishing general jurisdiction is a difficult one to meet, requiring extensive contacts between a defendant and a forum." Id. at 492 (internal quotations omitted). Indeed, in order for a state to have general jurisdiction over a foreign corporation, the corporation must be considered "at home" in the foreign state. See Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014); Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846 (2011). Moreover, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Daimler, 134 S. Ct. at 760. A contract between a non-resident defendant and a New Jersey company to manufacture a portion of the defendant's product is insufficient to render the defendant at home in New Jersey. Senju Pharm. Co., Ltd. v. Metrics, Inc., 2015 U.S. Dist. LEXIS 41504, *28-29 (D.N.J. Mar. 31, 2015).

In addition, the United States Supreme Court noted the possibility of an "exceptional" case where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." Daimler, 134 S. Ct. at 760. It is important to caution, however, that an approach that "approve[s] the exercise of general jurisdiction in every

---

[1] Defendants also assert a third argument in support of the motion to dismiss for lack of personal jurisdiction regarding a previous Order to Show Cause filed by Plaintiffs on July 27, 2015. In summary, Defendants argue that it is appropriate for this Court to enter judgment on the issue of personal jurisdiction before ruling on Plaintiffs' application for emergent relief. Currently, however, this is a non-issue because Plaintiffs' Order to Show Cause has been resolved in favor of a consent order to be submitted to the appropriate court once it is determined.

State in which a corporation 'engages in a substantial, continuous, and systematic course of business' … is unacceptably grasping." Id. at 761 (internal citations omitted).

Overall, Plaintiffs have not met their burden in establishing that this Court should exercise general jurisdiction over any of the Defendants. As discussed above, Plaintiffs must proffer material evidence to meet this burden and not merely rely upon the pleadings. Moreover, it would be inappropriate to grant jurisdictional discovery.

A. Zavation

Defendants argue that Plaintiffs cannot establish general jurisdiction over Defendant Zavation. Importantly, Defendants point to the fact that Zavation is a Mississippi limited liability company with a principal place of business in Mississippi. Zavation cannot be considered "at home" in New Jersey for several reasons: (a) it is not qualified to do business in New Jersey, (b) no business is solicitied from anyone located in New Jersey, (c) no products are sold to customers in New Jersey, (d) the spinal implant products Zavation sells are not manufactured in New Jersey, (e) it does not own property in New Jersey, and (f) it does not have any facilities or employees located in New Jersey. See Johnson I Cert. ¶¶ 4-15. In addition, Defendants argue that Zavation's contractual relationship with a New Jersey company to develop a bone replacement product is insufficient to exercise general jurisdiction. The bone replacement product being developed through this contract has not been sold and does not compete with any of Plaintiffs' products listed in the Complaint. See Pastena Cert. 28. Defendants cite that "[t]he fact that Defendants have a contract with one New Jersey based company to manufacture a part of its product does not make Defendants' activity in the state 'constant' and 'pervasive' [sic] so as to render it at home in New Jersey for the purposes of general jurisdiction." Thus, the Court may not exercise general jurisdiction over Zavation.

Plaintiffs assert two reasons why this Court should exercise general jurisdiction over Zavation. First, the Plaintiffs argue that the fact Zavation sells products in New Jersey through its distributor is determinative. Second, the contractual relationship Zavation has with a New Jersey company developing a new bone replacement product establishes general jurisdiction over Defendants.

Both of these arguments, however, are unpersuasive. Assuming Plaintiffs' allegations regarding Zavation's contacts with New Jersey are correct, the contacts are not continuous and substantial enough to warrant the exercise of general jurisdiction. Although Zavation is a limited liability

company and not a corporation, like the defendant at issue in <u>Daimler</u>, the same reasoning employed by the United States Supreme Court can be used here. Since Zavation is not "at home" in New Jersey, it would be inappropriate to hale Zavation into New Jersey state court for **any** cause of action. Specifically, Zavation's principal place of business is in Mississippi and does not have any physical presence in New Jersey. Zavation's members do not reside in New Jersey. Additionally, Zavation is not an "exceptional" case as described in <u>Daimler</u>. Merely having a manufacturing contract with a New Jersey company and indirectly selling products in New Jersey through a distributor does not rise to a systematic and substantial business relationship with New Jersey. Therefore, this Court does not exercise general jurisdiction over Zavation.

### B. Jeffrey Johnson

Similarly, Defendants argue that exercising general jurisdiction over Defendant Jeffrey Johnson would be inappropriate. At all relevant times, Jeffrey Johnson resided in Mississippi. Moreover, Jeffrey Johnson does not maintain "continuous and systematic contacts" with New Jersey to warrant the exercise of personal jurisdiction.

Although, Plaintiffs fail to specifically address the reasons why this Court should exercise general jurisdiction over Jeffrey Johnson in its opposition, the analysis is similar to the one discussed above in regards to Zavation. Although Jeffrey Johnson served as the President of Zavation during all relevant times to this suit (and continues to serve as President), his relationship with New Jersey is not systemic and continuous enough to warrant the exercise of general jurisdiction. Moreover, Jeffery Johnson resides in Mississippi and as discussed in <u>Daimler</u>, a person's residence is determinative in the general jurisdiction analysis. Therefore, this Court does not exercise general jurisdiction over Jeffrey Johnson.

### C. J2 Manufacturing

Defendants also argue that the Court may not exercise general jurisdiction over J2 Manufacturing for much of the same reasons why the Court cannot exercise general jurisdiction over Zavation. J2 Manufacturing is a Mississippi limited liability company with a Mississippi principal place of business. J2 Manufacturing does not have property in New Jersey, does not sell products to any customers in New Jersey, nor is it registered to do business in New Jersey. <u>See</u> Johnson II Cert. ¶¶ 5-7.

In a similar fashion to Jeffrey Johnson, Plaintiffs fail to specifically assert why this Court has general jurisdiction over J2 Manufacturing. J2

Manufacturing's only member is Kyle Johnson, who is not personally named in this suit. J2 Manufacturing is a Mississippi limited liability company with its principal place of business in Mississippi. Therefore, J2 Manufacturing is not "at home" in New Jersey and does not have a sufficient relationship with New Jersey for this Court to exercise general jurisdiction.

### D. Jurisdictional Discovery

In the event that the issue of personal jurisdiction cannot be decided upon the existing motion record (i.e. pleadings and affidavits), the New Jersey Court Rules "specifically allow for oral testimony, depositions and cross-examination when affidavits do not suffice." State of Maine v. SeKap, S.A. Greek Co-op. Cigarette Mfg. Co., 392 N.J. Super. 227, 243 (App. Div. 2007); see also R. 1:6-6. Essentially, "further discovery is permitted and may be necessary to resolve the jurisdictional issues." Id. (citing Jacobs, 309 N.J. Super. at 462). In the context of a determination of jurisdiction, the Appellate Division has stated that "[d]iscovery may be particularly useful when the relationship between a party and an affiliate must be explored." Id. at 244.

In this case, Plaintiffs assert that if this Court were to decide not to presently exercise general jurisdiction over Defendants, then this Court should grant jurisdictional discovery to pursue a future finding to exercise general jurisdiction. Plaintiffs indicate several questions regarding Defendants contacts with New Jersey that could potentially lead to a determination to exercise general jurisdiction. For example, Plaintiffs ask how much revenue is generated from Defendants' product sales in New Jersey and whether Zavation's bone replacement product (currently being developed in conjunction with a New Jersey company) is a result of misappropriation of trade secrets.

Discovery regarding jurisdictional issues is not warranted here. Defendants are all Mississippi residents. Even if more information were uncovered showing Defendants' revenues from products sold in New Jersey, that information is still not enough to warrant the exercise of general jurisdiction. Additionally, how the bone replacement products are being used by Zavation in conjunction with its other products will not alter the fact that Defendants are not at home in New Jersey; Defendants maintain no physical presence in this State. The motion record as it currently stands is sufficient to make a determination in this matter. Moreover, it is unlikely that further discovery here would reveal any thus-far hidden "smoking gun" that would permit this Court to properly exercise personal jurisdiction over Defendants.

### II. Specific Jurisdiction

Specific jurisdiction is implicated when the cause of action directly relates to a defendant's contacts with the state. Lebel v. Everglades Marina, Inc., 115 N.J. 317, 322 (1989). Indeed, a single act may sufficiently satisfy a minimum contact analysis for specific jurisdiction purposes. Burger King Corp., 471 U.S. at 476 n.18; see also Maglio & Kendro, Inc. v. Superior Enerquip Corp., 233 N.J. Super. 388, 396 (App. Div. 1989). New Jersey state law recognizes a similar test for specific jurisdiction consistent with United States Supreme Court precedent. McKesson Corp., v. Hackensack Med. Imaging, 197 N.J. 262, 276 (2009). New Jersey courts apply a two-prong test that requires that: (1) the nonresident defendant have certain "minimum contacts" with the forum state; and (2) the assertion of jurisdiction over such defendant does not offend traditional notions of fair play and substantial justice. Lebel, 115 N.J. at 322; Blakey v. Cont'l Airlines, Inc., 164 N.J. 38, 66 (2000).

A. Minimum Contacts Analysis

The first prong of the test requires that the nonresident defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum." Hanson v. Denckla, 357 U.S. 235, 253 (1958). The defendant need not have physical presence within the state, but must deliberately target the forum. O'Connor, 496 F.3d at 317.

Overall, Defendants assert that the Court cannot exercise specific jurisdiction because Defendants did not target New Jersey and therefore, could not reasonably anticipate being haled into New Jersey state court for their conduct. Assuming that Plaintiffs' allegations are correct, Defendants note that it would only point to Mississippi jurisdiction. Namely, the Defendants' alleged use of Plaintiffs' confidential information occurred in Mississippi, Defendants interfered with Plaintiffs' contracts involving Mississippi residents, and the confidentiality/non-competition contracts were governed by Mississippi law.

Defendants then address their connection with Plaintiffs, whose parent company, Precision Spine, has a principal place of business in New Jersey. Defendants assert that having the mere knowledge that Plaintiffs were New Jersey companies is not sufficient to satisfy the minimum contacts analysis. See New Earthshell Corp. v. Lycos Internet Ltd., 2015 U.S. Dist. LEXIS 103972, *11-12 (D.N.J. Aug. 7, 2015); A.S.T., LLC v. Pallenberg, 2007 U.S. Dist. LEXIS 45701, *12 (D.N.J. June 25, 2007). In addition, the fact that Defendants may foresee their actions having an effect in New Jersey is also insufficient to demonstrate purposeful availment. See Voltaix, LLC v. NanoVoltaix, Inc., 2009 U.S. Dist. LEXIS 91380, *10-11 (D.N.J. Oct. 1, 2009).

8

In addition, Defendants argue that Jeffrey Johnson entering into the Settlement Agreement with Spinal USA is insufficient for the exercise of specific jurisdiction. In essence, the Settlement Agreement made no mention of New Jersey and Jeffrey Johnson signed the agreement in Mississippi. Additionally, Plaintiffs were represented by Mississippi attorneys in the negotiations for the Settlement Agreement.

On the other hand, Plaintiffs argue that specific jurisdiction is appropriate because each Defendant has minimum contacts with New Jersey. The analysis for each Defendant is as follows.

    i.    Jeffrey Johnson

Plaintiffs argue that Jeffrey Johnson specifically directed his fraudulent activity at Plaintiffs through negotiating with their executive, James Pastena, while he was physically in New Jersey. Moreover, Jeffrey Johnson knew that his actions would harm New Jersey residents by orchestrating Plaintiffs' New Jersey employees to disclose confidential information and by setting up a company to unlawfully compete with the New Jersey-based Plaintiff parent company (Precision Spine) and Plaintiff subsidiary companies (Spinal USA and Precision Medical). Since the claims in the Complaint arise out of Jeffrey Johnson's contacts with New Jersey, the minimum contacts prong of specific jurisdiction is satisfied.

Plaintiffs have not met their burden in asserting that this Court should exercise specific jurisdiction over Jeffrey Johnson. Jeffrey Johnson merely having knowledge that his conduct may adversely impact Plaintiffs' New Jersey interests is not enough to exercise specific jurisdiction. As discussed above, to satisfy the specific jurisdiction analysis Jeffrey Johnson must have "purposefully availed" himself to New Jersey. Taking action that will have the subsequent effect of harming Plaintiffs in New Jersey does not show that Jeffrey Johnson deliberately targeted the forum of New Jersey. Indeed, Jeffrey Johnson's alleged orchestration of leading Plaintiffs' employees to disclose confidential information occurred while Jeffrey Johnson was physically in Mississippi. Moreover, Jeffrey Johnson knowing that James Pastena was physically located within New Jersey during the settlement negotiations does not suffice because it fails to show that Jeffrey Johnson targeted the New Jersey forum itself. Therefore, it would be inappropriate to exercise specific jurisdiction over Jeffrey Johnson.

    ii.    Zavation

Plaintiffs argue that Zavation also has the minimum contacts necessary for this Court to assert specific jurisdiction. Through the actions of its President, Jeffrey Johnson, Zavation targeted Precision Spine, residing in New

Jersey, and its two subsidiaries, in its fraudulent and tortious conduct. Also, Zavation induced Plaintiffs' employees to send confidential information and "raided" Plaintiffs employees by offering employment with Defendants. For example, in July 2014, a Zavation employee induced Plaintiffs' employee, John Wilson, into revealing confidential information. Another potential basis for specific jurisdiction is the contractual relationship Zavation has with a New Jersey company with regard to developing a new bone replacement product.

Plaintiffs have not met their burden in showing that this Court has specific jurisdiction over Zavation. As discussed above with regard to Jeffrey Johnson, Zavation's mere knowledge that its conduct may negatively affect Plaintiffs in New Jersey fails to show that Zavation purposefully availed itself to the New Jersey forum. Importantly, the "raiding" of Plaintiffs' employees resulted in the employees accepting jobs with Zavation in Mississippi. Additionally, Zavation allegedly used Plaintiffs' confidential information in Mississippi and interfered with Plaintiffs' Mississippi contracts. The source of the confidential information at issue in this case is Mississippi since it was not until 2012 that Precision Spine purchased Spinal USA and Precision Medical, which were both Mississippi companies. Therefore, it is unforeseeable that Zavation could be sued in New Jersey for the conduct at issue in this case.

In addition, the contractual relationship Zavation has with a New Jersey company to develop a bone replacement product is not determinative. In order for this Court to exercise specific jurisdiction, the case must relate to Zavation's contacts with New Jersey. Zavation's bone replacement product is outside the scope of this suit because Plaintiffs' claims are based upon Zavation's spinal products. Plaintiffs did not proffer material evidence to the contrary. For the foregoing reasons, this Court will not exercise specific jurisdiction over Zavation.

      iii.   J2 Manufacturing

Plaintiffs assert much of the same allegations against J2 Manufacturing. J2 Manufacturing, through Kyle Johnson, targeted and obtained information belonging to Plaintiffs from Plaintiffs' employee, James Cochran. The information obtained through Cochran included product blueprints that were created in New Jersey.

Similar to the above conclusion regarding Zavation, this Court will not exercise specific jurisdiction over J2 Manufacturing. Obtaining information that was allegedly created in New Jersey is not enough to show J2 Manufacturing purposefully availed itself to New Jersey. J2 Manufacturing's alleged wrongful conduct all occurred in Mississippi and only had an ancillary effect upon Plaintiffs' interests in New Jersey. Therefore, this Court will not exercise specific jurisdiction over J2 Manufacturing.

B. Traditional Notions of Fair Play and Substantial Justice

There are several factors courts should consider when deciding whether exercising personal jurisdiction over the defendant is reasonable. These factors include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, [and] the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies." Burger King Corp., 471 U.S. at 477; O'Connor, 496 F.3d at 324. The Supreme Court has recognized, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." Asahi Metal Indus. Co., 480 U.S. at 114.

Defendants assert they would be greatly burdened if forced to litigate this action in New Jersey. First, the Defendants have no offices or physical presence in New Jersey. Second, all relevant documents and witnesses are located in Mississippi. Furthermore, Defendants assert New Jersey has no interest in adjudicating this case. This action concerns a private breach of contract and tort claim involving Mississippi residents, contracts, corporations, and laws. Thus, Mississippi would be the appropriate forum for such action.

Plaintiffs, however, assert that due to Defendants contacts and relationship with New Jersey, exercising specific jurisdiction over Defendants comports with traditional notions of fair play and justice.

Since this Court determined that Defendants did not have sufficient minimum contacts with the forum of New Jersey, it is unnecessary to decide whether the exercise of personal jurisdiction comports with traditional values of fair play and substantial justice. It should be noted, however, that since Defendants' alleged wrongful conduct all occurred in Mississippi, Mississippi has the most interest in adjudicating this matter.

C. The Effects Test

The "effects test" was originally set forth in Calder v. Jones, 465 U.S. 783 (1984) and later adopted by the New Jersey Supreme Court in Blakey v. Continental Airlines, Inc., 164 N.J. 38 (2000). This test dictates that a "court may exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside the forum which have a particular type of effect upon the plaintiff within the forum." IMO Indus. v. Kiekert AG, 155 F.3d 254, 261 (3d Cir. 1998). Although the effects test is separate from the specific jurisdiction analysis detailed above, the tests share similarities

11

and if satisfied, both tests permit courts to exercise personal jurisdiction based upon the nexus of the defendant's contacts with the forum state.

To exercise personal jurisdiction pursuant to the effects test, the plaintiff must show: (1) that the defendant committed an intentional tort; (2) the "plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;" (3) the defendant explicitly directed his or her tortious conduct toward the forum rendering the forum the focal point of tortious activity. Id. at 265-66; see also Marten v. Godwin, 499 F.3d 290, 297 (3d Cir. 2007). The mere fact that "the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself" to meet the requirement that the forum served as the focal point of tortious activity. Id. at 265. Indeed, the "defendant must manifest behavior intentionally targeted at and focused on the forum for Calder to be satisfied." Id.

Assuming Plaintiffs' allegations are true, Defendants' argue that their conduct was targeted to Mississippi and that Mississippi is instead the focal point of harm and tortious activity. The mere allegation that Defendants allegedly knew New Jersey residents would be harmed by their actions is not enough to satisfy the effects test.

On the other hand, Plaintiffs argue that the effects tests provides jurisdiction over Defendants. First, Defendants committed intentional torts by taking Plaintiffs' confidential information and "raiding" Plaintiffs' employees. Second, the brunt of the harm was felt by Plaintiffs in New Jersey. Defendants stole confidential information that was created in New Jersey and therefore, Plaintiffs Spinal USA and Precision Medical, through its New Jersey parent company Precision Spine, suffered harm in New Jersey. Additionally, Plaintiffs assert that the harm inflicted by Defendants is still occurring to this day and therefore, directly impacting the New Jersey-based parent company, Precision Spine. Finally, Plaintiffs allege that Defendant Jeffery Johnson, in his capacity as President of Zavation, explicitly directed the tortious conduct toward Plaintiffs in New Jersey in retribution for his termination in 2010. Moreover, Jeffrey Johnson's conduct was part of a scheme to knowingly harm Plaintiffs' interests in New Jersey.

As discussed above, New Jersey-based Precision Spine did not acquire Spinal USA and Precision Medical until 2012. The Settlement Agreement executed between Spinal USA and Defendant Jeffrey Johnson occurred before this purchase and thus, while Spinal USA and Precision Medical were strictly Mississippi companies. However, Plaintiffs' arguments that the effects test is applicable to this action have some merit. Plaintiffs claim that the Defendants' predatory actions are still occurring to this day and causing significant financial

harm. For example, as discussed above, Zavation employee John Cummins contacted Plaintiffs' employee in July 2014 to receive confidential information. Therefore, Defendants alleged unlawful behavior is currently affecting Plaintiffs in New Jersey.

Overall, however, Plaintiffs have not met their burden for this Court to exercise personal jurisdiction over Defendants based upon the effects test. Specifically, Plaintiffs have not shown that New Jersey is the focal point of harm. Despite the fact that Plaintiffs are allegedly suffering harm in New Jersey, Plaintiffs also seem to be suffering harm in Mississippi as well. According to the Complaint, Defendants directly targeted Mississippi. The true focal point of Defendants' conduct is Mississippi because Defendants communicated with Plaintiffs' employees located in Mississippi, the alleged use of Plaintiffs' confidential information occurred in Mississippi, and Defendants offered Plaintiffs' former employees positions located in Mississippi. Therefore, this Court will not exercise personal jurisdiction based upon the effects test.

D. Stream of Commerce

The United States Supreme Court in J. McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780 (2011) discussed the stream of commerce theory for establishing specific jurisdiction. The New Jersey Supreme Court expressly adopted the stream of commerce theory as an independent basis for exercising personal jurisdiction in Gendler v. Telecom Equipment Corp., 102 N.J. 460 (1986). The main issue in the stream of commerce theory is whether the defendant's activities manifest an intention to submit to the power of the sovereign state. Id. at 2788. Generally, it is not enough that the defendant merely knows that its goods will travel to the forum state. Id. Instead, the defendant must have specifically targeted that forum. Id. The Supreme Court's guidance in J. McIntyre is particularly of note:

> The owner of a small Florida farm might sell crops to a large nearby distributor, for example, who might then distribute them to grocers across the county. If foreseeability were the controlling criterion, the farmer could be sued in Alaska or any number of other States' courts without ever leaving town. And the issue of foreseeability may itself be contested so that significant expenses are incurred just on the preliminary issue of jurisdiction. Jurisdictional rules should avoid these costs whenever possible.

Id. at 2790.

In this case, Defendants assert that the stream of commerce theory for specific jurisdiction is inapplicable. First, Plaintiffs may not use stream of

13

commerce because the case is unrelated to any products sold in New Jersey. Second, using the reasoning from J. McIntyre above, it cannot be said that Defendant Zavation specifically targeted New Jersey. Zavation sells products to a distributor in Texas, which will sometimes instruct Zavation to ship products to the distributor in New Jersey. Thus, the distributor in Texas serves as a middle-man cutting any ties Zavation has with New Jersey for the purposes of the stream of commerce theory.

Plaintiffs, however, requests this Court to grant jurisdictional discovery to uncover information regarding Defendants' products sold in New Jersey. Relevant information that could potentially result in the exercise of personal jurisdiction based upon the stream of commerce theory is whether Defendants specifically marketed and targeted New Jersey as a forum for its products. Plaintiffs assert that discovery may illuminate a substantial relationship between Defendants and New Jersey through product sales.

If this were a products liability case, Plaintiffs may have been correct in noting that uncovering Defendants' product sales would lead the Court to exercise personal jurisdiction over Defendants based upon the stream of commerce theory. This case, however, is based upon unfair competition, tortious interference, breach of contract, and other business torts. Even if Defendants targeted New Jersey as a forum for its products, New Jersey has no interest in adjudicating this matter because Plaintiffs' alleged injuries did not arise from Defendants' product sales. Since Defendants' product sales are not relevant to the issues at hand, jurisdictional discovery is not warranted.

This Court grants Defendants' motion to dismiss the Complaint for lack of personal jurisdiction.

STEPHAN C. HANSBURY, P.J., Ch.

14